IN RE PETITION OF JOHN HARRIS TO BE RESTORED TO
THE ROLL OF ATTORNEYS.

Argued July 6, 1915—Decided November 9, 1915.

Grounds stated upon which a former attorney, who was disbarred,
is relieved from the disability thence arising with respect to his
application for admission to the bar.

On petition.

On March 5th, 1895, the name of John Harris was stricken
from the roll of attorneys and counselors of this court. This
action was taken upon charges formulated by a committee
of the Camden County Bar Association. The testimony
taken by this committee was presented to the court and
ordered to be filed. At the same time the committee pre-
sented the record of the Camden Quarter Sessions showing
the conviction of Harris of obtaining money under false
pretences. Upon the inspection of this judgment record a
rule was entered striking the name of Harris from the roll.
The criminal judgment was reversed by this court at the
February term, 1896. *State* v. *Harris,* 58 *N. J. L.* 436.

Harris made applications for reinstatement in 1899 and
again in 1900 and 1901, upon none of which was the reversal
of the criminal judgment urged as a plenary ground for re-
instatement. Upon the occasion of the last application an
opinion was filed by Mr. Justice Van Syckel stating the rea-
sons for the denial of the application. *In re Harris,* 66 *N. J.
L.* 473.

Subsequently, Harris made two applications for admis-
sion, at neither of which was any testimony taken or opinion
filed.

On January 16th, 1915, Harris sent to the Camden County
Bar Association the following letter:

"*To the members of the Camden County Bar Association:*

"GENTLEMEN—I intend to make application to the Supreme Court at the February term for reinstatement. I write this letter to notify you of the fact and request that your association appoint a committee with full power to investigate the whole subject, with authority to do what may seem proper in the premises.

"The course followed in the case of *In re Hawkins,* 87 *Atl. Rep.* 243, seems to be the proper one.

"I want the most thorough investigation, and I stand ready to assist your committee in any way I can.

"My name was stricken from the rolls March 5th, 1895.

　　　　　　"Very truly,

　　　　　　　　　　　　　　"JOHN HARRIS.

"January 16th, 1915."

The request contained in this letter was complied with by the appointment of a committee of the bar association to make the investigation requested and report to the association.

On March 3d, 1915, the committee caused the following notice to be given:

　　　　　　　"NOTICE.

"The Camden County Bar Association having appointed the subscribers, a committee to inquire into the conduct and character of John Harris since March 5th, 1895, and his fitness to be reinstated as a practicing attorney of the courts of this state, he having given notice to said bar association of his intention to make application to the Supreme Court for such reinstatement, said committee do hereby request all persons having knowledge or information concerning the said John Harris, bearing upon the question of his character and conduct since the date aforesaid and his present fitness for such reinstatement, to communicate by letter, or otherwise, with William Early, Esquire, No. 426 Market street, Camden, New Jersey, secretary of the committee, on or before

In re Harris.　　　　　　　*88 N. J. L.*

the eighteenth day of March next, at two o'clock in the after-' noon, at which time the committee will sit at the law library, in the court house, in the city of Camden, to consider the communications received and to hear oral testimony for or against such reinstatement.

"Samuel K. Robbins,

"Charles R. Stevenson,

"F. Morse Archer,

"William Early,

"Joseph Kaighn,

*"Committee.*

"Dated March 3d, 1915."

The precise manner of publication of this notice does not appear in the report, but that it reached both the members of the bar of South Jersey and the general public is apparent from the fact that of the seventy-four written responses received by the committee one-half were from members of the bar, and the others from citizens prominent in public life or in the business world, and the like proportion obtained as to the fifty-four witnesses who appeared and testified before the committee.

On April 7th, 1915, the committee made its report to the bar association at a special meeting of which every member had written notice. On motion of Mr. Kraft, seconded by Mr. Ralph Donges, the report was received and directed to be forwarded to the Supreme Court with all proofs taken and letters received, together with the following resolution which was unanimously adopted: "Be it further resolved, that this association hereby recommend to the New Jersey Supreme Court that the petition of the said John Harris for reinstatement, as a member of the bar of this state, be granted, and that he be reinstated by the said court as a member of the bar."

On February 15th, 1915, Harris filed his petition, a copy of which was served upon the Camden County Bar Association.

In re Harris.

Argument by counsel for the petitioner was heard by part second of the court and afterward by the court sitting *in banc*.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH and BLACK.

For the petitioner, *Harvey F. Carr* and *John W. Wescott*.

The opinion of the court was delivered by

GARRISON, J. In the case of *In re Branch,* 70 *N. J. L.* 537, it was pointed out that in New Jersey the admission of attorneys is regulated by a local common law peculiar to this state, which, arising prior to the year 1776, had in the year 1844 become a distinctive attribute of the Supreme Court and constituted one of those "powers" which the constitution of that year declared "except as herein otherwise provided shall continue as if this constitution had not been adopted." Article 10, paragraph 1.

In marked contrast to the foregoing the disbarment of attorneys and their restoration to the roll have from the very earliest period been the subject of express statutory enactment.

On the 14th day of February, 1799 (*Pat. L., p.* 355), the legislature passed "An act to regulate the practice of the courts of law," the first three sections of which were as follows:

"1. That every person of full age, &c., may appear and prosecute or defend any action in any of the courts of judicature in this state, in person, or by his solicitor-in-chancery or attorney-at-law."

"2. That no person, except in his own case, &c., shall be permitted to appear and prosecute or defend any action in any of said courts, but such as is a licensed solicitor or attorney-at-law, who shall be under the direction of the court in which he acts."

"3. That if any counsellor, solicitor or attorney-at-law shall be guilty of malpractice in any of said courts he shall be put out of the roll and never after be permitted to act or practice as a counsellor, solicitor or attorney-at-law unless he shall obtain a new license and be again enrolled in due form at law."

These statutory provisions were in force in 1844 when the constitution was adopted and *a fortiori* came within the declaration of that constitution already quoted. These statutes now appear in our Practice act as sections 16, 17 and 5.

The provisions of section 5 as to disbarment for malpractice and readmission to practice clearly contemplate that it shall be possible for an attorney who has been put out of the roll to be again admitted to practice, and the policy thus declared by the legislature, and not "otherwise provided" in the constitution, is binding upon us to the extent of forbidding our adoption of a rigid judicial policy, to the effect that an attorney once disbarred shall never again be admitted to practice. Notwithstanding the fundamental policy that is thus inherent in the statute from which we derive our powers, there are certain minor questions of judicial policy that are open to our adoption or rejection, one of which is whether the making of complete restitution by the former attorney shall, in all cases, be a *sine qua non* to his restoration to the roll.

In the recent case of *In re Hawkins,* 87 *Atl. Rep.* 243, Chief Justice Pennewill, speaking upon this question for the Superior Court of Delaware, said: "We do not attach very much importance, as a rule, to the matter of restitution, because that may depend more upon financial ability or other favoring circumstances than repentance or reformation. A thoroughly bad man may make restitution, if he is able, in order to rehabilitate himself and regain his position in the community; and a thoroughly good man may be unable to make any restitution at all." Without underestimating the importance of restitution, a moment's reflection must convince one that of all the factors that enter into the question of moral fitness, the mere circumstance of restitution is the

one most likely to be fortuitous and to depend upon conditions and circumstances that afford no reliable test of moral qualities. The money may have come from wealthy relatives, or from a lucky speculation, or from engaging in some alien business venture, or it may have been borrowed, in which case the old liability is apparently extinguished by the creation of a new one. Taken in connection with other circumstances, restitution may be of the utmost significance, but this, oftener than not, is due to such other circumstances rather than to the mere fact of non-restitution; as, for instance, if the former attorney became possessed of sufficient money with which to make restitution but refused so to apply it.

Upon the whole, we conclude that there should be no hard and fast rule upon the subject of restitution, but that each case should be considered and dealt with in the light of its own circumstances, bearing in mind that the aim of the court is to search the heart of the petitioner in order to arrive at a just judgment as to his moral standards as shown in his conduct.

The evidence in the present case convinces us that the petitioner has made such restitution as his crippled capacity to earn money permitted, and has done so to the satisfaction of those who still have claims against him. This was the conclusion reached by the committee of the bar association, who, with the witnesses before it, reported upon this topic as follows:

"Harris, since his disbarment aforesaid, has remained in the city of Camden where he has been engaged chiefly in tutoring candidates for admission to the bar, assisting attorneys in the preparation of pleadings, briefs and for the trial of cases, and in looking up evidence and examining books of account, that he has also done some other work, and has managed to support his family and rear and educate his children, three in number, one of whom is now a practicing attorney of this state; that he has compromised the claims against him, referred to in the above decision as existing at the time of his disbarment, in the manner shown by the testimony herewith submitted, which is probably as much as

could be reasonably expected in view of his circumstances and limited income; that the claimants above referred to, so far as your committee has been able to ascertain, appear to be satisfied with his efforts to reimburse them and to be favorable to his reinstatement as an attorney."

We conclude that the partial restitution the petitioner has actually made is not inconsistent with his moral reformation, and that his failure to make complete restitution should not be held to be an insuperable bar to his present petition.

This brings us to a consideration of the merits of the present petition as disclosed by the proofs. Before taking up their consideration, however, it should be noted as a most significant circumstance that the petitioner's application is accompanied by the unanimous recommendation of the Camden County Bar Association, at whose instance the petitioner twenty years ago was disbarred.

In Mr. Justice Van Syckel's opinion, in 1901, he stated as one of the grounds for denying the petition at that time that "the bar association did not appear by any representative before the committee (appointed by the court) and took no part in the proceedings." That objection is now not only removed, but in its place we have the affirmative recommendation of the association based upon an investigation that was comprehensive in its range and judicial in its character. In the examination of the evidence itself we are impressed, at the outset, with the manner in which it was obtained, viz., that it was not procured by the personal solicitations of the petitioner or by anyone acting in his behalf, but was elicited by the bar association in the course of an independent investigation conducted entirely by its agents. Personally solicited letters or mere signatures obtained to a petition, while plenary evidence of the unwillingness of such signers to deny a personal favor, is very far from being cogent evidence of any particular state of facts, especially if it relates to the moral character of the person who obtains the letters or circulates the petition. This sort of evidence, if such it can be called, is so well understood as to be practically negligible. On the contrary, the body of testimony now before us lacks

nothing that could make for its spontaneous and impersonal character. It is given by citizens of the highest standing from all walks of life, divided between the profession of the law and the laity, although naturally the former predominate over any other class. These witnesses, each in his own way, and from his own knowledge or observation, give testimony to the same general effect, which can be best stated in the language of a few taken at random. A former judge of the Camden Pleas, and also of its District Court, and one of the most respected members of its bar, testified: "I have known Mr. Harris ever since his admission to the bar, and I do not know of a single thing that has occurred since his disbarment that should prevent his reinstatement to the bar."

The present District Court judge testified: "Since his disbarment his conduct and reputation, as far as I have observed, have been excellent." To the same effect is the testimony of the mayor of the city, a former mayor, the sheriff of the county, the former sheriff, the county clerk, surrogate and pretty much all of the city and county officials now or formerly holding office.

The judge of the Circuit Court, although not appearing as a witness, was present as a member of the bar association at the special meeting at which the resolution favoring the petitioner's reinstatement was unanimously adopted.

The congressman representing the district testified: "I have known, I think, very intimately, Mr. Harris for the past twenty years and his conduct has been of the best. I have never heard a single insinuation passed on John Harris since he was disbarred."

Mention has been made of the fact that the petitioner has supported himself in part by the preparation of law students for their examination, and not the least impressive of the evidence before us comes from such former students; let one speak for the rest: "Mr. Harris prepared me, among others, for my bar examination, and in all his lectures and talks to us, has stood only for the highest, noblest and best ideals of the profession. We all know to whom we can go when blocked by a knotty or complicated problem, and know, too, that we'll

get good, square, honest advice, for Mr. Harris has long been known as dean of our legal advisers." It may be added, by way of parenthesis, that of the two hundred and twenty students prepared by the petitioner one only failed to pass the bar examination.

Business men and members of the bar of Camden county, as well as of the nearby counties from Burlington to Atlantic, give evidence similar to the quotations already given, which could be extended to include the testimony of every one of the hundred and twenty-five witnesses. It may be well to conclude with a single quotation from the testimony given before the committee by a judicial officer who, more than any other, is in constant and intimate touch with the local bar and all that concerns its interests. Vice Chancellor Leaming testified: "I know what Mr. Harris' conduct has been in this city since his disbarment. I know that it has been in every way exemplary. If it is possible for a man to be reinstated, after being once disbarred, I think Mr. Harris is entitled to that reinstatement."

This is the conclusion to which we are led by the evidence before us, which is both ample in quantity and convincing in its character; and we may say that upon no other kind of evidence would we lend a favorable ear to a petition of this sort. Having determined that a disbarred attorney may be reinstated, and having decided that in the present case restitution has been made to the extent of the petitioner's capacity and to the satisfaction of those whom he injured, the evidence as to the moral fitness of the petitioner should, we think, be dealt with upon the general rules applicable to its weight and character. Finding the testimony to be ample in quantity, given in a *quasi*-judicial inquiry by witnesses of the highest standing and of unquestioned opportunity for knowing the truth of that to which they voluntarily testify, we can reach no other verdict upon the proofs than that the case is a proper one for the interposition of the court to relieve the petitioner from the disability under which he now rests, especially in view of the fact that the bar association upon whose charges and presentation he was disbarred has, after

a thorough investigation, unanimously asked for his reinstatement.

No one of these considerations standing alone, and no group of them less than the whole, would support this conclusion, which rests emphatically upon the concurrence and combination of them all. This conclusion relegates the question of the proper practice to be pursued under section 5 of the Practice act to such future application as the petitioner may be advised to make, the matter, as far as I know, never having been passed upon or considered by the court. All that we now decide is that the hitherto insuperable bar to such application is removed.

Subsequently, the following rule was entered in the Supreme Court:

"The petition of John Harris, of Camden, to be restored to the rolls of attorneys of this state having been presented to the February term of this court, and it appearing to the court that notice of the presentation of said petition was given to the Camden County Bar Association, and it further appearing that said bar association appointed a committee of its members to make an investigation and report to the said association, the result of its investigation and its finding, together with letters and testimony presented to said committee, which said association having duly considered the report adopted a resolution, recommending to this court that the said John Harris be reinstated as a member of the bar of this state, and at the June term of this court the said petition, committee's report, with the letters and testimony attached thereto, and the recommendation of the Camden County Bar Association, being presented to the court, and the argument of Harvey F. Carr, Esquire, and John W. Wescott, Esquire, of counsel with petitioner, having been heard and considered, the court now determines that the prayer of the petitioner to be restored to the rolls cannot be granted under the law and practice of this court, but that upon the proofs the case is a proper one for the interposition of the court to relieve the petitioner from the disability under

which he now rests. And a further application having been made at the present term of the court for an order admitting the said John Harris, as an attorney of this court, it is ordered that the said John Harris shall be admitted to the examination for license as an attorney upon his compliance with sections (a) and (b) of rule 4 of this court.

"Dated Jan'y 12th, 1916.

"By the court,

"WILLIAM S. GUMMERE, *C. J.*"