IN RE BONN BROWN

(No. 13338)

Decided January 29, 1980.

*John R. Fowler* for petitioner.

*John O. Kizer* for Committee on Legal Ethics.

*DiTrapano, Jackson & Buffa and Rudolph L. DiTra-pano,* for amicus curiae

MILLER, JUSTICE:

This case involves a request by a disbarred attorney for reinstatement of his license to practice law, pursuant to Article VI, Section 35 of the By-Laws of The West Virginia State Bar [herein Bar By-Laws] as amended by order of this Court on April 3, 1979. The license to practice law of Bonn Brown was suspended by this Court in *In re Brown,* ___ W.Va. ___, 197 S.E.2d 814 (1973), for the reasons set out therein. Upon the affirmance of his criminal conviction by the Fourth Circuit Court of Appeals, his license was annulled by this Court by order entered December 21, 1973.

Article VI, Section 35 of the Bar By-Laws provides the right for a disbarred attorney to petition this Court for license reinstatement after five years have elapsed since the date of his disbarment. Under this section, the following steps occur. Upon filing of a petition, a copy is submitted to the Secretary-Treasurer of the State Bar, who refers the petition to its Committee on Legal Ethics. This committee conducts an investigation of the matter and files its written report and any recommendations with this Court. The petitioner or the Ethics Com-

mittee may request a hearing before this Court. The decision to grant or deny the petition is then made by this Court. If a license is reinstated, it may be "upon such terms and conditions as the court may prescribe."

In another portion of the Bar By-Laws, Article VI, Section 4, the powers of the Committee on Legal Ethics are set out and encompass the broad right to investigate complaints "including petitions for reinstatement of an attorney at law in this State . . . and to hold hearings thereon and make . . . findings and recommendations . . . ."

An evidentiary hearing on the disbarment or suspension of an attorney is routinely utilized and, in fact, provides the evidentiary record on which this Court bases its ultimate judgment. *Committee on Legal Ethics v. Mullins,* ____ W.Va ____, 226 S.E.2d 427 (1976); *Committee on Legal Ethics v. Pence,* ____ W.Va. ____, 216 S.E.2d 236 (1975); *Committee on Legal Ethics v. Graziani,* ____ W.Va. ____, 200 S.E.2d 353 (1973); *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973); *Committee on Legal Ethics v. Smith,* 156 W.Va. 471, 194 S.E.2d 665 (1973).

Here, on this petition for reinstatement, no evidentiary hearing was held, and the matter is before us on the petition for reinstatement and an answer filed by the Committee on Legal Ethics.[1] The Committee apparently believed that Article VI, Section 35 of the Bar By-Laws contained the only applicable procedural requirements and that no evidentiary hearing was necessary.

Certainly, Article VI, Section 4 does not specifically mandate a hearing on a petition for reinstatement. How-

---

[1] A number of letters have been filed on behalf of the petitioner by attorneys, friends and community leaders. Many courts recognize that such *ex parte* material is of little evidentiary value on the difficult factual issues that must be resolved on a reinstatement. *In re Gaines,* 251 Ala. 329, 37 So.2d 273 (1948); *Hathaway v. The Florida Bar,* 184 So.2d 426 (Fla. 1966); *Matter of Raimondi,* 403 A.2d 1234 (Md. 1979); *In re Keenan,* 314 Mass. 544, 50 N.E.2d 785 (1943); *In re Harris,* 88 N.J.L. 18, 95 A. 761 (1915).

ever, it is incontestable that a disbarment results from the most serious ethical violations, and the courts have traditionally cast a heavy burden on the petitioning attorney to demonstrate his fitness for reinstatement.[2] *In re Reed*, 341 So.2d 774 (Fla. 1977); *Lester v. Kentucky Bar Association*, 532 S.W.2d 435 (Ky. 1976); *In re Braverman*, 271 Md. 196, 316 A.2d 246 (1974); *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429, (1975); 7 Am. Jur. 2d *Attorney at Law* § 72 (1963). The ultimate question is whether he possesses the integrity, high moral character and legal competence to justify the reinstatement of his license. Most courts have considered a number of factual inquiries in answering this question, as illustrated by *In re Hiss, supra:*

> "In judging whether a petitioner satisfies these standards and has demonstrated the requisite rehabilitation since disbarment, it is necessary to look to (1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his

---

[2] Article VI, Sections 23 and 24 of the Bar By-Laws makes this distinction between disbarment, which results in the attorney's license being annulled, and a suspension of the license, a lesser penalty enabling the attorney to apply for reinstatement under Section 32 in a shorter period than on a disbarment:

Section 23 in part:

"The license of any attorney shall be annulled and such attorney shall be disbarred upon proof that he has been convicted - (a) of any crime involving moral turpitude or professional unfitness; or (b) of receiving money for his client as his attorney and failing to pay the same on demand, or within six months after receipt thereof, without good and sufficient reason for such failure, as in the statute provided."

Section 24:

"The license of any attorney shall be suspended for such time as the court may prescribe upon proof that he has been convicted of a felony not involving moral turpitude or professional unfitness. Whenever a judgment or decree shall be standing or rendered in any court against an attorney for money collected by him as such, such court shall suspend the license of such attorney until such judgment or decree shall be satisfied."

disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills. See *Application of Spriggs*, 90 Ariz. 387, 388, n. 1, 368 P.2d 456 (1962); *In re Barton*, 273 Md. 377, 379, 329 A.2d 102 (1974); *In re Application of Strand*, 259 Minn. 379, 381, 107 N.W.2d 518 (1961); *In the Matter of the Petition of Seijas*, 63 Wash.2d 865, 868-869, 389 P.2d 652 (1964). Cf. *In re Petition of Dawson*, 131 So.2d 472, 474 (Fla. 1961)." [368 Mass. at 460, 333 N.E.2d at 437-38]

As we stated in *State v. Gary*, ___ W.Va. ___, 247 S.E.2d 420, 421 (1978), there are several reasons for requiring an evidentiary hearing where the operative facts are disputed:

> "First, the requirement of a hearing not only affords the parties the opportunity to offer relevant information in support of their positions, but also provides the court with a mechanism to obtain the necessary facts on which to make an informed judgment on the question. Second, absent any hearing, there is no basis on which an appellate court can determine what facts motivated the decision of the circuit court.
>
> . . . .
>
> "Finally, there exists a larger purpose and that is to provide the parties and the public the opportunity to realize that there is a careful, reasoned and judicious decision-making process at work on an important judicial issue . . . ."

Apparently recognizing the necessity of an adequate factual record to determine a reinstatement question, many courts have evolved various hearing procedures in conjunction with their general supervisory power over the practice of law. *See, e.g., In re Hiss, supra; Petition of Sears*, 147 So.2d 522 (Fla. 1962); *Application of Sharpe*, 499 P.2d 406 (Okla. 1972); *Re Simmons*, 81 Wash.2d 43, 499 P.2d 874 (1972); Annot., 70 A.L.R.2d 268, 325 (1960); Machen, *The Law of Disbarment and Reinstatement in Maryland*, 36 Md. L. Rev. 703 (1977).

In *In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970), we recognized that, as an incident to this Court's inherent power to supervise the practice of law, it could reinstate an attorney's license that had been annulled. The dissent in *Daniel* argued that the Court's ruling was, in effect, an amendment to the Bar By-Laws, which could not be accomplished without following the amendment provisions of the By-Laws.

The dissent in *Daniel* overlooked W. Va. Code, 51-1-4a, which authorizes the creation of The West Virginia State Bar by this Court and makes it subject to this Court's supervision.[3] This section also explicitly recognizes our inherent rulemaking power,[4] a part of which is our historic role in defining the practice of law and regulating the conduct of attorneys. *State ex rel. Partain v. Oakley*, ___ W.Va. ___, 227 S.E.2d 314 (1976); *West Virginia State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959).

Even though the Bar By-Laws are subject to the approval of this Court under W. Va. Code, 51-1-4a, this does not mean that upon their approval they become the sole standard to define and control the practice of law and regulate the conduct of attorneys. If this Court were to hold that the Bar By-Laws were the only source of power regulating the practice of law, it would abdicate its inherent responsibilities and the express mandate of W. Va. Code, 51-1-4a. This we decline to do.

----

[3] In pertinent part, W.Va. Code, 51-1-4a, provides:

"The supreme court of appeals of West Virginia shall, from time to time, prescribe, adopt, promulgate, and amend rules:

. . . .

"(d) Organizing and governing by and through all of the attorneys at law practicing in this State, an administrative agency of the supreme court of appeals of West Virginia, which shall be known as 'the West Virginia State bar.' The West Virginia State bar shall be a part of the judicial department of the State government and is hereby created for the purpose of enforcing such rules as may be prescribed, adopted and promulgated by the court from time to time under this section. . . ."

[4] W. Va. Code, 51-1-4a, in material part:

"The inherent rule-making power of the supreme court of appeals is hereby declared."

In cases involving a petition for reinstatement where an attorney's license has been annulled, we conclude that Article VI, Sections 4 and 35 of the Bar By-Laws must be read *in pari materia* to require that the Committee on Legal Ethics shall hold an evidentiary hearing to enable a record to be made on the issue relating to the petitioner's qualifications to have his license reinstated. Such evidentiary hearing shall be held within 60 days from the date of the receipt of the application for reinstatement, except that for good cause shown the time for hearing may be extended.

As we have previously noted, the petitioner has the burden of demonstrating his fitness for license reinstatement at the hearing. Counsel for the petitioning attorney shall have the right to present evidence in favor of reinstatement, and counsel for the Committee shall have the right to introduce opposing evidence. Both sides shall have the right of cross-examination.

At the conclusion of the hearing, the Committee shall make findings and recommendations substantiated by the record, and shall set forth its reasons. On the basis of the record and the findings and recommendations of the Committee, this Court will determine the reinstatement question pursuant to Article VI, Section 35 of the Bar By-Laws.

In light of the foregoing, this case is remanded to the Committee on Legal Ethics for an evidentiary hearing. Such hearing shall be held within 60 days from the date of the mandate of this Court, unless for good cause shown the time for hearing is extended.

*Remanded.*