455 S.E.2d 921

Mark L. McMILLIAN, Plaintiff
Below, Appellee,

v.

Arden ASHLEY, Sheriff of Kanawha
County, in Place of Danny Jones, For-
mer Sheriff of Kanawha County, Defen-
dant Below, Respondent.

Arden D. ASHLEY, Sheriff of Kanawha
County, Appellant,

v.

Mark McMILLIAN, Appellee.

No. 22340.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 17, 1995.

Decided March 3, 1995.

James M. Cagle, Charleston, for appellee.

Phillip Gaujot, Charleston, for appellant.

FRED L. FOX, II, Judge:[1]

By special order dated 23 June 1987, Sheriff Danny Jones of Kanawha County, West Virginia, terminated the employment of Deputy Sheriff Mark L. McMillian. The Civil Service Commission for Deputy Sheriffs for Kanawha County (Commission) reversed the termination order and granted Deputy McMillian back pay and attorney's fees. By an order dated 9 February 1994, the Circuit Court of Kanawha County affirmed the Commission's ruling. Sheriff Jones' successor, Sheriff Arden Ashley, appeals the circuit court's order.

In this case we decide whether the Commission acted properly when it ruled that Sheriff Jones lacked just cause for the dismissal of Deputy McMillian.

Sheriff Jones based his termination of Deputy McMillian on three separate incidents of alleged misconduct: (1) misconduct relating to a May 1985 extradition trip to New Mexico to retrieve a prisoner named Wolfe Winton; (2) misconduct relating to a March 1986 extradition trip to Florida to retrieve a prisoner named Leo Facemeyer; and (3) misconduct while serving as bailiff during the 13 June 1987 night session of the Kanawha County Magistrate Court.

Subsequent to his dismissal, Deputy McMillian requested a hearing before the Commission pursuant to W.Va.Code § 7–14–17(a).[2] A hearing was conducted, and a ruling favorable to Deputy McMillian was issued by the Commission and subsequently affirmed by the Circuit Court of Kanawha County. In *Ashley v. McMillian,* 184 W.Va.

---

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

2. West Virginia Code § 7–14–17(a) (1993) provides, in pertinent part:

> If the deputy sought to be removed, discharged, suspended or reduced shall demand it, the civil service commission shall grant him a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur....

590, 402 S.E.2d 259 (1991), this Court reversed and remanded the matter for a *de novo* hearing before the Commission.[3]

The matter was again heard by the Commission in six sessions between 16 December 1991 and 15 May 1992. On 13 November 1992, the Commission handed down its findings and rulings through its "Commission Order," a twenty-seven page document which was signed by two commissioners.[4] Acknowledging the decision to be "a very close call," the Commission concluded the Sheriff "... failed to demonstrate that Mr. McMillian acted ... with a dishonest intent." Further, "... absent dishonesty, we conclude that Mr. McMillian's conduct, while not laudable, did not amount to substantial misconduct affecting the rights and interests of the public."

Sheriff Ashley, as successor to Sheriff Jones, appealed this ruling to the circuit court. By order of 21 March 1994, Judge John L. Cummings, sitting by designation on the Sixth Judicial Circuit, ruled the Commission's findings were not clearly wrong and affirmed the Commission's award of back pay and attorney's fees. It is from this order that Sheriff Ashley now appeals.

The standard of review which guides appellate resolution of the issues herein was announced in syllabus point 1 of *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971), wherein it was stated: "A final order of a police civil service commission based upon a finding of fact will not be reversed ... unless it is *clearly wrong* or is based upon a mistake of law." (Emphasis added.)

█ More recently, in *Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879 (1990), this Court adopted the holding in *Appeal of Prezkop, supra,* but further held in syllabus point 1:

---

3. The reversal was based upon the Commission's failure to have a quorum present at each hearing.

4. The third commissioner dissented and reserved the right to file a dissenting opinion. No dissenting opinion was ever filed.

5. West Virginia Code § 7–14–17 (1993) provides, in pertinent part:

A final order of the civil service commission, based upon findings not supported by the evidence, *upon findings contrary to the evidence,* or upon a mistake of law, will be reversed and set aside by this Court upon review. (Emphasis added.)

West Virginia Code § 7–14–17 permits a sheriff to discharge a protected deputy only for "just cause."[5] As previously indicated, the issue here on appeal is whether the circuit court and the Commission erred in ruling there was no just cause for Deputy McMillian's dismissal.

In *Johnson v. City of Welch,* 182 W.Va. 410, 388 S.E.2d 284, 287 (1989), this Court held as follows:

Just cause has been defined as a substantial cause "which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interest of the public. An officer should not be removed from office for matters which are trivial, inconsequential, or hypothetical, or for mere technical violations of statute or official duty without wrongful intention." 67 C.J.S. *Officers* § 120b (1936). *See also City of Logan v. Dingess,* 161 W.Va. 377, 381, 242 S.E.2d 473, 475 (1978); *Thurmond v. Steele,* 159 W.Va. 630, 225 S.E.2d 210 (1976); *Guine v. Civil Service Commission,* 149 W.Va. 461, 141 S.E.2d 364 (1965).

█ In syllabus point 2 of *Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879 (1990), we adopted the above principles and applied them to deputies:

W.Va.Code 7–14–17 (1981), requires that dismissal of a deputy sheriff covered by civil service be for just cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical viola-

On and after the effective date [July 1, 1971] of this article, no deputy sheriff of any county subject to the provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause, which shall not be religious or political, except as provided in section fifteen [§ 7–14–15] of this article....

tions of statute or official duty without a wrongful intention.

Further, in syllabus point 5 of *Mangum* we held that:

> Seriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute. The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public.

While Deputy McMillian's actions with regard to the May 1985 extradition trip and the 13 June 1987 night session of Kanawha County Magistrate Court raise serious questions concerning his conduct, we do not find it necessary to discuss those incidents within the context of this opinion. Rather, we find Deputy McMillian's actions and the circumstances surrounding the 1986 extradition trip amounted to misconduct justifying his dismissal for just cause.

In March of 1986, Deputy McMillian was duly assigned to proceed to the State of Florida to assume custody of and return Leo Facemeyer, a felony fugitive, to West Virginia. Deputy McMillian chose not to request the assistance of an additional law officer in the performance of this assignment; rather, he was accompanied by Ms. Tina Means, a secretary in the Kanawha County Sheriff's Department. Deputy McMillian was married at the time, but not to Ms. Means.

Upon arrival at the Tampa Airport in Florida, Deputy McMillian elected to spend the first night, along with Ms. Means, at the Don Ce Sar Beach Resort, a luxury resort in St. Petersburg.[6] The following night, they reposed at a Holiday Inn in Sebring, Florida. The room rate for one person was $54.00, and the rate for two people was $58.00.

Upon his return to West Virginia, Deputy McMillian sought reimbursement for his personal expenses from his employer, Kanawha County. Included within those personal expenses were the costs he incurred in paying for certain of Ms. Means' meals, as well as the additional costs he incurred in securing double occupancy lodging.

With regard to Ms. Means' participation in the assignment, the Commission concluded that "the Sheriff has not borne his burden of proof on the charge that it was improper for Mr. McMillian to have allowed Tina Means to accompany him to Florida." We disagree. The reasoning assigned for the Commission's conclusion was (1) it had been done in the past, and (2) there was no written or unwritten policy prohibiting it. We would suggest that a pattern of wrongful conduct in the past is never justification for its continuance; and some actions are so patently improper that policies of prohibition, written or otherwise, would be superfluous.

Deputy McMillian was charged with the custody of a felony fugitive. Ms. Means was neither trained nor qualified to assist him in this task, and her participation was not authorized by the Sheriff's Department. Her status was, therefore, that of an unofficial guest or voluntary social companion.

■ A deputy sheriff who takes an unofficial guest on an extradition assignment, the purpose of which is to return a felony fugitive to this State, needlessly and seriously endangers the public safety. Further, in doing so he unnecessarily subjects his employer to an unlimited potential for liability. Such actions constitute misconduct, and it is misconduct of a substantial nature directly affecting the rights and interests of the public.

As to the reimbursement of Deputy McMillian for Ms. Means' expenses, the Commission found that the "practices of the Sheriff's Department created an atmosphere in which an officer could have concluded [rightly or wrongly] that it was not inappropriate to seek reimbursement for [such] expenses ...," adding that, after all, Ms. Means "was a departmental employee and had provided minor assistance with the business of the extradition trip." This Court is unable to determine what evidence, if any, supported the finding of "minor assistance."

---

6. The Don Ce Sar Beach Resort is located twenty-eight miles southwest of the Tampa Airport, and the prisoner was incarcerated sixty-three miles in an easterly direction from the Tampa Airport.

Further, her status as a departmental employee was of no significance at all, since she had no official function to justify her presence.

The Commission ultimately determined that, with regard to the reimbursement of Tina Means' expenses, "... we find that the Sheriff has failed to demonstrate that Mr. McMillian acted (prior to his dismissal) with a dishonest intent...." Again, we disagree with the Commission's findings.

■ A deputy sheriff who takes an unofficial guest on an official assignment and then seeks reimbursement from public funds for additional expenses occasioned thereby, violates the statutory law of West Virginia.[7] Such act is, by its very nature and for obvious reasons, seriously wrongful conduct potentially damaging to the rights and interests of the public, and justifies his dismissal.

Within its own order, the Commission concedes that Deputy McMillian and Tina Means were less than credible witnesses. On page 21 of the order, the Commission notes: "[W]e find this testimony [of McMillian and Means] to be neither consistent nor believable...." And on page 25, the Commission refers to "... the flavor of dishonesty that surrounds the issue of the cost of Tina Means' involvement...." Given these observations, as well as the plain evidence of wrongdoing, we question how the Commission reached its ultimate conclusion that Deputy McMillian's actions did not rise to a level justifying his dismissal for just cause.

In *State ex rel. Ashley v. Civil Service Commission*, 183 W.Va. 364, 395 S.E.2d 787, 791 (1990), this Court noted that "... circumstances which have been considered just cause [for dismissal] are involvement in activity which casts aspersions or doubt on a law enforcement officer's honesty and integrity and which directly affects the public's rights and interests." Clearly, Deputy McMillian's actions herein cast aspersions and doubt as to his honesty and integrity. Further, these actions directly affect the public's rights and interests, including, but not limited to, the right to public safety and the interest in fiscal integrity.

We find just cause for Deputy McMillian's dismissal by Sheriff Jones, and conclude that the Commission and the circuit court's rulings were both contrary to the evidence and clearly wrong.

The judgment of the Circuit Court of Kanawha County is, therefore, reversed.

Reversed.

BROTHERTON, C.J., did not participate.

FOX, J., sitting by temporary assignment.

7. Specifically, reference is hereby made, but not limited to, one or both of the following statutes: W.Va.Code § 61–3–22 (1992) (Falsifying accounts) and W.Va.Code § 61–3–24 (1994 Cum. Sup.) (Obtaining money, property, and services by false pretenses).