578 S.E.2d 339

**In re:  Mark L. McMILLIAN.**

No. 27866.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 3, 2000.

Decided Dec. 5, 2000.

Thomas W. Smith, Esq., Charleston, West Virginia, Attorney for Appellant Mark L. McMillian.

John M. Hedges, Esq., Byrne & Hedges, Morgantown, West Virginia, Attorney for Appellee West Virginia Board of Law Examiners.

PER CURIAM:

In this proceeding, Mark L. McMillian prays that this Court reject a recommendation of the West Virginia Board of Law Ex-

aminers and admit him to the practice of law in the State of West Virginia.

## I.

## FACTS

In May 1999, Mark L. McMillian, graduated from the Thomas Jefferson School of Law, an ABA accredited law school. Subsequently, he took and passed the West Virginia bar examination and sought admission to the practice of law in West Virginia.

Mr. McMillian's application for admission disclosed that in 1995, he was convicted and imprisoned for a federal felony arising out of illegal electronic eavesdropping. Further, it appeared that in 1987, Mr. McMillian had been discharged from his position as deputy sheriff of Kanawha County for seeking reimbursement from public funds for taking an unofficial guest on an extradition assignment, in violation of the statutory law of the State. The facts of Mr. McMillian's discharge had been previously discussed by this Court in *McMillian v. Ashley*, 193 W.Va. 269, 455 S.E.2d 921 (1995), a civil action growing out of the dismissal. Those facts showed that Mr. McMillian, as a deputy sheriff, was assigned to proceed to the State of Florida to assume custody of a felony fugitive, and return the fugitive to West Virginia. He was accompanied on the trip by a secretary in the Kanawha County Sheriff's Department. Upon arriving in Tampa, Florida, Mr. McMillian elected to spend the first night, along with the secretary, at a luxury resort in St. Petersburg, Florida. The following night, they stayed in a Holiday Inn in Seabring, Florida. Upon his return to West Virginia, Mr. McMillian sought reimbursement for his personal expenses from his employer, the Kanawha County Sheriff's Department, including reimbursement for the secretary's meals, as well as for the additional costs incurred in securing a double occupancy room.

When Mr. McMillian appeared before the 8th District Character Committee, he openly answered questions relating to his background, including the conviction, and the Committee found that he was morally fit to practice law unless the felony conviction *per se* rendered him morally unfit. The District Character Committee's findings were transmitted to the West Virginia Board of Law Examiners, and the Board interviewed Mr. McMillian on November 11, 1999. After the interview, the Board scheduled a further hearing before John Fowler, Esquire, a hearing examiner. At the hearing, evidence was taken regarding Mr. McMillian's 1995 conviction, on his discharge as a deputy sheriff, and on the question of whether he had intentionally absented himself from the United States when it appeared that he would be prosecuted on the eavesdropping charge. Extensive character and other evidence was also introduced. After the conclusion of the hearing, Mr. Fowler, on March 28, 2000, issued a lengthy written opinion in which he found that Mr. McMillian possessed the requisite character to practice law and recommended that he be admitted to practice in the State of West Virginia.

In spite of Mr. Fowler's recommendation, the West Virginia Board of Law Examiners, on May 12, 2000, issued a final recommendation to this Court in which the majority of the Board recommended against Mr. McMillian's admission to the practice of law. Among the factors leading to its conclusion were Mr. McMillian's wiretapping conviction and the facts surrounding his discharge as a deputy sheriff of Kanawha County in 1987.

In the present proceeding, Mr. McMillian prays that this Court disregard the recommendation of the Board of Law Examiners and admit him to the practice of law. He argues that while he was convicted of the federal felony, that matter has been concluded and that he has readily admitted that his conduct was inexcusable. He also argues that the circumstances surrounding his discharge as a deputy sheriff should not be taken as reflecting on his moral fitness to practice law and that the overall circumstances of his case suggest that he is morally fit to practice law.

## II.

## STANDARD OF REVIEW

In Syllabus Point 2 of *Matter of Dortch*, 199 W.Va. 571, 486 S.E.2d 311 (1997),

this Court discussed the review of an individual's application for admission to the practice of law in the State of West Virginia. The Court stated:

> This Court reviews *de novo* the adjudicatory record made before the West Virginia Board of Law Examiners with regard to questions of law, questions of application of the law to the facts, and questions of whether an applicant should or should not be admitted to the practice of law. Although this Court gives respectful consideration to the Board of Law Examiners' recommendations, it ultimately exercises its own independent judgment. On the other hand, this Court gives substantial deference to the Board of Law Examiners' findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

## III.

## DISCUSSION

In Syllabus Point 4 of *Matter of Dortch*, *id.*, the Court outlined the factors which it would consider in assessing the moral character of an applicant to the practice of law in West Virginia whose background includes a criminal conviction. The Court stated:

> When assessing the moral character of an applicant whose background includes a criminal conviction, the following factors should be considered: (1) The nature and character of the offenses committed; (2) The number and duration of offenses; (3) The age and maturity of the applicant when the offenses were committed; (4) The social and historical context in which the offenses were committed; (5) The sufficiency of the punishment undergone and restitution made in connection with the offenses; (6) The grant or denial of a pardon for offenses committed; (7) The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period; (8) The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse); (9) The applicant's candor, sincerity and full

disclosure in the filings and proceedings on character and fitness; (10) The applicant's constructive activities and accomplishments subsequent to the criminal convictions; and (11) The opinions of character witnesses about the applicant's moral fitness. These factors are intended to be illustrative rather than exhaustive.

In *Matter of Dortch*, the Court also indicated that a principal concern of the Court in assessing an applicant's admission was the preservation of public confidence in the administration of justice. In taking this position, the Court echoed the importance of public confidence in the administration of justice as discussed in *In Re: Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980).

In the present case, the Board of Law Examiners made certain findings of fact relating to the applicant's eavesdropping conviction. The Board found:

> The conviction is of relatively recent vintage. By your own admission, you knew that you were engaged in criminal activity. This did not occur during your youth, but when you were approximately forty years old, and presumably were of sufficient maturity to understand the consequences of your actions. Not only did you knowingly violate the law, you did so for financial compensation. The wire-tapping was undertaken in conjunction with ongoing litigation and involved, or potentially involved, the interception of confidential attorney/client communications.

The Board of Law Examiners also focused on the facts surrounding Mr. McMillian's earlier dismissal as a deputy sheriff of Kanawha County. The Board found that the acts leading to the dismissal constituted seriously wrongful conduct. The Board also found: "[Y]ou committed these acts while occupying a position of public trust, not unlike a lawyer, and when by training, experience, and maturity, you should have known better."

Finally, the Board indicated that it was troubled by Mr. McMillian's absence from the country while the federal felony charges were pending against him. The Board stated:

> The testimony has differed regarding whether one purpose of such extended ab-

sence, which you have conceded was not initially planned, was to gain an advantage in plea negotiations with the federal authorities. In any event, as it appears to the Board that plea negotiations were conducted during your extended absence, which resulted in a reduction of charges in exchange for your testimony, it causes the Board concern regarding your ability to conform your future conduct to the requirements of law.

The Court has examined the record in the present case and has found that it supports the findings of the Board of Law Examiners relating to Mr. McMillian's felony conviction. The conviction did grow out of intentional, illegal eavesdropping which occurred when Mr. McMillian was of mature years and did involve ongoing litigation and the interception of confidential attorney-client communications. Similarly, Mr. McMillian did participate in the activity which lead to his discharge as a deputy sheriff. The Court characterized that conduct as follows *McMillian v. Ashley, supra:*

> A deputy sheriff who takes an unofficial guest on an official assignment and then seeks reimbursement for public funds for additional expenses occasioned thereby, violates the statutory law of West Virginia. Such act is, by its very nature and for obvious reasons, seriously wrongful conduct, potentially damaging to the rights and interests of the public, and justifies his dismissal.

193 W.Va. at 273, 455 S.E.2d at 925.

On the other hand, evidence was introduced showing that Mr. McMillian is now remorseful about his prior wrongdoing, that he was candid and made full disclosure in the filing and the proceedings relating to his application, and that he has lived a relatively constructive life since released from incarceration. Further, a number of character witnesses have expressed the opinion that he is morally fit to be admitted to the practice of law. Finally, in this Court's view, the evidence on whether Mr. McMillian intentionally absented himself from this country to avoid prosecution on the eavesdropping charge, is somewhat equivocal.

Although in *Matter of Dortch, supra,* the Court indicated that 11 factors should be considered in assessing an applicant's fitness for practice of law, the purpose of examining those factors is to determine whether there is a likelihood that an applicant will conduct himself in a manner beneficial to the public interest, and in a manner which will inspire public confidence in the integrity of the legal profession.

In the present case, Mr. McMillian, as a mature adult, twice engaged in conduct which has thrown into question his respect for the law, conduct of a type which, if committed by a practicing lawyer would inevitably diminish seriously the public's confidence in the legal profession. The repetition of the conduct suggests the possibility that similar conduct could occur again. Its nature, its gravity, and the fact that in each case it reflected a lack of concern or respect for the law suggests that the recommendation of the Board of Law Examiners was supported by reliable, probative, and substantial evidence.

In light of this, the Court believes that, in spite of the fact that Mr. McMillian has introduced evidence that he is remorseful, that he has been open, that many consider him fit to practice law, and that there are more positive than negative factors among the 11 mentioned in *Matter of Dortch, supra,* Mr. McMillian has failed to show that it is likely that his conduct will be beneficial to the public interest or will inspire confidence in the integrity of the judicial profession. In short, the Court believes that Mr. McMillian has failed to show that he is sufficiently morally fit to practice law in the State of West Virginia.

For the reasons stated, the petition of Mr. McMillian to practice law in the State of West Virginia is denied.

Admission to the practice of law denied.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Judge JAY M. HOKE, sitting by temporary assignment.

Chief Justice MAYNARD and Justice STARCHER dissent.

Justice SCOTT, concurring:

I concur with the holding in this case. A contrary result would have been an outrage. Public confidence in the administration of justice and the integrity of the bar of this State would have been dealt a crippling blow had we not supported the recommendation of the Board of Law Examiners.

I write separately only to suggest that decisions involving felons applying for admission to the bar should be much simpler. We need a clear statement of principle: No person convicted of a felony need apply. This basic qualification to practice law in this State should be stated and applied without exception. Rule 2.0, Rules of Admission to the Practice of Law, should be amended.

Our public policy, as written by our legislature, does not permit a felon to participate in the administration of justice even in an isolated case as a juror, without exception. W. Va.Code § 52–1–8(b)(6) (2000); *State v. Bongalis,* 180 W.Va. 584, 378 S.E.2d 449 (1989). In contrast, and with strange results, our public policy as written by this Court permits a felon to be licensed to practice law and actively participate more intimately in the administration of justice, full-time. The legislature is right. Our rule should be changed.