**In re Stephen G. POLIN, Applicant.**

**No. 93–SP–682.**

District of Columbia Court of Appeals.

Sept. 9, 1993.

---

Before KERN, NEWMAN, and BELSON, Senior Judges.

BELSON, Senior Judge:

For the second time, Stephen G. Polin seeks admission to the bar of the District of Columbia. Once again the Committee on Admissions submits a favorable recommendation.

When we considered Polin's first application, we ordered him to show cause why it should not be denied because of serious criminal misconduct. Polin had been convicted of conspiracy to distribute cocaine, a felony, in December of 1984, had been sentenced to a period of imprisonment, and had been released from a halfway house in January of 1987.[1] On August 27, 1991, this court rejected Polin's first application, stating:

> Although Polin has demonstrated persuasively that he has made outstanding progress toward rehabilitation, we con-

clude that under all the circumstances, including in particular the relatively short period of time that has passed since his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and his subsequent release from a halfway house in January of 1987, he has failed to establish that he is so fully rehabilitated that he can be deemed at this time to have the good moral character required for admission to the bar. Therefore, we deny Polin's application for admission.

*In re Polin, supra* note 1, 596 A.2d at 51. In our opinion, we also observed that the Committee on Admissions should have arranged an independent investigation into Polin's behavior (citing *In re Manville (Manville I)*, 494 A.2d 1289, 1294 (D.C. 1985)).

After our opinion issued, Polin reapplied for admission and again took and passed the District of Columbia bar examination. Thereafter, the Committee on Admissions conducted a thorough examination of Polin's moral character, considered the results of a private investigation it arranged, and now tenders a strong and unanimous recommendation that Polin be admitted to the bar. We adopt the recommendation of the Committee, and append it to this opinion.

■ We emphasize, as we pointed out in connection with Polin's first application, that we cannot set a fixed number of years of good behavior as an essential part of proof of the requisite rehabilitation following conviction of a serious crime. *Polin, supra,* 596 A.2d at 53. Rather, we must be persuaded that the duration and quality of an applicant's good behavior suffices to establish present good moral character. *See id.*

■ In the case of this applicant, the period of rehabilitation is shorter than the periods of rehabilitation exhibited by the three applicants who were considered in *In re Manville (Manville II)*, 538 A.2d 1128 (D.C.1988) (en banc). There, each applicant had led an exemplary life for at least eleven years, as distinguished from the six and

---

1. *See In re Polin,* 596 A.2d 50, 51–52 (D.C.1991)

(describing Polin's misconduct in some detail).

one-half years of such behavior that Polin has accomplished. But we must take into account the extraordinary nature of Polin's accomplishments and the remarkably affirmative results of the investigation by the Committee and its independent investigator. Having done so, we conclude that the time has been reached in this particular case when no purpose would be served by requiring a more extended demonstration of worthiness for admission. *See Manville II, supra,* 538 A.2d at 1132 (citing *Manville I,* 494 A.2d at 1295 & nn. 9–10) (determination of the necessary good moral character is a case-by-case process). Considering the merits discussed above and the entirety of Polin's conduct as developed in the record in light of the factors bearing upon good moral character enumerated in *Manville I, supra,* 494 A.2d at 1296–97, we accept and adopt the appended recommendation of the Committee on Admissions, and grant Polin's application for admission to the bar of the District of Columbia.

*So ordered.*

NEWMAN, Senior Judge, dissenting:

I continue to adhere to my views expressed in my dissent in *In re Manville (Manville II),* 538 A.2d 1128, 1138 (D.C. 1988) (en banc).

### APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS COMMITTEE ON ADMISSIONS

In the Matter of,

STEVEN G. POLIN,

Applicant, E# 28381.

### FINDINGS AND RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

#### BACKGROUND

Steven G. Polin is an applicant for admission to the Bar of this Court by examination. He previously took and passed the July 1983 examination. However, because in 1984 Polin was convicted of a felony for violating the federal laws against distributing controlled substances (cocaine), the Committee held a formal hearing concerning his application. In December 1989, while recognizing that his criminal conduct and the circumstances surrounding and following it created a "very heavy burden" for Mr. Polin to show his good character and fitness to practice law, the Committee nevertheless concluded that, by his "exceptional showing of rehabilitation," he had carried that burden. Committee's 12/18/89 Report at 10–11. Polin's exceptional showing consisted of testimony that, following his conviction, he had overcome the drug addiction that led to his criminal activity by becoming very active in Alcoholics Anonymous (AA) and Narcotics Anonymous (NA), and after his release from prison, he had been heavily involved in helping recovering addicts by assisting in founding recovery residences for recovering alcoholics and addicts, the Oxford Houses, and by serving as a volunteer for the Lawyers Counseling Program of the District of Columbia Bar. There was strong and unanimous support for his admission from a wide variety of sources, including many attorneys and others active in AA, NA, and with the Lawyers Counseling Program. The Committee on Admissions unanimously recommended his admission, stating that it had "determined that he is thoroughly rehabilitated" and that the Committee "has no serious doubts about his moral character." *id.* at 6.

In August 1991, however, the Court of Appeals denied Polin admission to the Bar. Noting that it had only been four and one-half years since he had fully regained his freedom, the Court concluded that not enough time had passed safely to conclude that Polin was rehabilitated: "it is premature to draw that conclusion despite his laudable efforts to date." *In re Polin, Id.* at 54 (D.C.1991) (footnote omitted). However, the Court added

As is demonstrated by the findings of the Committee, Polin has made truly commendable progress in overcoming his own addiction and in helping others who suffer from similar addictions. * * *

[W]e think it appropriate for us to indicate that, if he continues along the same path, it appears from this record to be most likely that he will be able at some future time to establish the requisite good moral character.

596 A.2d 50 at 55 (footnote omitted). The Court also stated that an independent investigation should be conducted into Polin's behavior. *Id.*, citing *In re Manville*, 494 A.2d 1289, 1294 (D.C.1985).

Subsequently Polin reapplied for admission, and has taken and passed the July 1992 examination. The Committee has commissioned a full investigation into his character by means of interviews of Polin's former employers, neighbors, and others. That investigation, and letters submitted to the Committee on his behalf, disclose that Polin is still very active in AA, NA, and with the Lawyer's Counseling Program. They also reveal that, in the four years since the Committee's formal hearing, Polin has married and adopted his wife's son, and has undertaken as a full-time job a position promoting the formation of Oxford Houses nationwide. Those who have worked with him, including officials of several states as well as counsel for the United States Department of Justice, enthusiastically endorse his admission to the Bar, as do others who have known Polin in various other contexts. The Committee once again recommends Mr. Polin's admission to the Bar. We are confident that he is fully rehabilitated.

## DISCUSSION

As indicated, the Committee's prior inquiry concerning Polin concluded in 1989. At that time, he was very active in AA, NA, and with the Lawyer's Counseling Program, and he was living in an Oxford House and helping with efforts to establish Oxford Houses elsewhere. He was employed performing law clerk jobs for various attorneys. Since that time, he has been married (in the fall of 1990); has adopted his wife's child; and has undertaken (since August 1990) a full-time career assisting in the establishment and running of Oxford Houses nationwide. See the Report of Investigation ("Investigation") at 9–10, 14.

The independent investigation the Committee commissioned interviewed Polin's former housemates at the Oxford House where he lived; neighbors of his at several different apartment houses; and virtually every employer Polin has had since he was released from prison. None of these people was aware of any information reflecting adversely on his character. Those of his neighbors who came to know Polin, his former housemates, and all of his employers recommended him without reservation for admission to the Bar. See *id.* at 5–6 (former neighbor who got to know Polin well); 6–9 (two former housemates); 9–10, 14–19 (five employers). His former employers who recommend Polin's admission include one of the owners of the first business he worked for after prison, even though Polin had sometimes chafed at some of the menial tasks on that job (*id.* at 19), and another employer who had fired Polin because he was too slow at the kind of specialized work involved, and who had contested Polin's claim for unemployment compensation after the firing (*id.* at 18). In other words, even those employers with whom Polin experienced some strain recommend his admission to the Bar. Most of his former employers, and particularly his present employer, enthusiastically endorse his admission.

Polin met his wife in the summer of 1980. *Id.* at 3. On their first date he told her the entire story about his experience with drugs, his conviction, prison, and his efforts on behalf of addicts. *Id.* at 3–4. They decided to marry early in 1990, and were married in the fall of 1990. *Id.* at 2, 14. He has since adopted her son by a prior marriage. *Id.* at 4. His neighbors state that Polin is a devoted family man and a good father. *Id.* at 5, 6.

After working a series of jobs as a law clerk (*id.* at 17, 18), Polin was hired in May 1989 as a publicist and administrator by those promoting Oxford Houses nationally. *Id.* at 10. In order to cut down on his travel, he resumed working as a law clerk

for the first six or seven months of 1990 (*id.* at 10, 14), until the Oxford House organization offered him a full-time position with less travel in August 1990 (*Id.* at 10, 12, 14). Since that time, Polin has been national coordinator, and overall troubleshooter, for that organization. *Id.* at 10, 12. In 1990, there were about 35 Oxford Houses nationwide, and there are now about 440. See 4/9/93 Cronin letter; see Investigation at 3. About 80 percent of the addicts and alcoholics who reside in Oxford Houses do not relapse compared to 20 percent in other programs. See 3/31/93 Shull letter at 2.

Polin's title is Director of Community Affairs. See Shull letter at 1; 4/14/93 Bender letter at 2. He helps Oxford Houses get established in various communities, particularly in overcoming neighborhood opposition to these group homes of recovering addicts and alcoholics. See *id.* at 12; 2/8/93 Regan letter; 2/26/93 Gold letter. Polin negotiates with local officials to overcome such opposition (See Gold letter at 1), and assists lawyers from the United States Department of Justice and the American Civil Liberties Union bring suit under the federal Fair Housing Act when necessary to prevent discrimination against recovering addicts, as disabled persons. See Investigation at 13–14; Gold letter. A Department of Justice lawyer who has worked closely with Polin states that "he is well respected in the community of lawyers...." Investigation at 13.

State officials in New Jersey and Virginia responsible for rehabilitation programs for addicts and alcoholics wrote the Committee praising Polin's efforts in the field and endorsing his admission to the Bar, as have lawyers involved in litigating cases involving Oxford Houses. See Shull letter; Regan letter; Gold letter; and 3/5/93 Pepper letter. A state official involved with alcohol and drug abuse programs for 26 years wrote: "I ... have rarely seen an individual in recovery with the energy, dedication, commitment and personal integrity

that Mr. Polin has demonstrated." Regan letter at 1.

In addition, Polin attends AA or NA meetings five times a week (Investigation at 8, 10); serves as a sponsor (advisor/guide) to a number of recovering addicts (*id.* at 9, 11); and remains active as a volunteer with the Lawyers Counseling Program (*id.* at 11). As several of those interviewed stated, in his job, and his personal life, Polin surrounds himself with recovering addicts and alcoholics (Investigation at 8, 16), and he has dedicated his entire life to assisting with their recovery.

Polin has now been free of drugs for eight years, and free from court supervision for nearly six. His entire life since his release from prison has been exemplary, and quite exceptional in its dedication to helping others. We have no doubts at all about Mr. Polin's moral character or fitness to practice law, and we recommend his admission without reservation.

> Respectfully submitted,
> Catherine B. Kelly
> Chairman
> Committee on Admissions

### CERTIFICATE OF SERVICE

I certify that a copy of this recommendation was sent by first-class mail on June 4, 1993, to Steven M. Buckman, Esq., Two Wisconsin Circle, # 610, Chevy Chase, MD 20815.

---

Catherine B. Kelly
Chairman Committee on Admissions
500 Indiana Avenue NW
Room 4200
Washington, DC 20001
(202) 879-2710