486 S.E.2d 311

**In the Matter of John Curtis DORTCH.**

No. 24040.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 5, 1997.
Decided April 14, 1997.

Dwayne L. Tinsley, Charleston, for John Dortch before the West Virginia Board of Law Examiners.

John M. Hedges, Morgantown, for West Virginia Board of Law Examiners.

McHUGH, Justice:

This matter is before this Court upon the application of John Curtis Dortch who, in 1975, pleaded guilty to second degree murder, attempted armed robbery and conspiracy, for admission to the practice of law in the State of West Virginia. Though the West Virginia Board of Law Examiners (hereinafter "Board") voted three to two to recommend Mr. Dortch's admission to the bar and subsequently issued a certificate of eligibility and filed it with this Court for his admission, this Court denies Mr. Dortch's admission to the practice of law in this State.

## I.

### Applicant's Background and Underlying Felony Offenses

The applicant was born in 1945 and was graduated from Howard University in Washington, D.C. in 1968 with a bachelor of arts degree in history and double minors in government and business. He served in the United States Army from 1968 through 1969 as an infantry officer, volunteering for active duty in Vietnam and receiving an honorable medical discharge as a result of injuries sustained in combat.[1]

Following his discharge from the military, Mr. Dortch returned to the Washington, D.C. area where, from 1969 through 1974, he enjoyed a successful career as a field underwriter for New York Life Insurance Company. He also became a registered representative with the National Association of Securities Dealers.

In 1974, the applicant founded JCD Enterprises, an operational holding company. For various reasons, JCD Enterprises faced financial failure in its first year. The applicant made legitimate efforts to obtain a capital infusion from investment bankers and underwriters. When these efforts proved unsuccessful, the applicant, in his words "panicked," and as a result, engineered a conspiracy to commit an armed robbery of the Columbia Federal Savings & Loan Association in Washington, D.C.

On September 20, 1974, the applicant and one of the other seven co-conspirators he assembled, John W. Bryant, parked two blocks from the bank. The couple was dressed in construction gear, complete with hard hat, work clothing and work boots.[2] Underneath their work clothing, the men wore civilian clothing. Mr. Dortch carried a bricklayer's bag containing various weapons.

While still approximately two blocks from the bank, the applicant was stopped on the sidewalk by a police officer in an unmarked cruiser who had apparently been alerted of the robbery scheme by an informant. Upon sensing that the applicant was carrying a weapon, the police officer tried to snatch it away, at which time the weapon, a sawed-off shotgun, discharged, causing powder burns under the applicant's eye. No one else was injured.

In the midst of the commotion, both Mr. Dortch and Bryant fled, but in different directions. The applicant shed his construction clothing in a nearby warehouse and, in his civilian clothing, re-entered pedestrian traffic, caught a bus and escaped. In the meantime, Bryant was apprehended by a District of Columbia police officer, twenty-four year old Gail Cobb. Officer Cobb had not pulled her weapon on Bryant when he shot and killed her. She was one of the first female police officers in the United States to be killed in the line of duty. The applicant, who was not at the scene where Officer Cobb was killed, heard about it on the radio. He surrendered to police shortly thereafter.

Mr. Dortch was subsequently indicted and tried on numerous counts related to the conspiracy, attempted bank robbery and felony murder. During the trial, however, the applicant entered a guilty plea to second degree murder, conspiracy and attempted armed robbery. He was sentenced to fifteen years to life in prison.

---

1. The applicant also received several commendations for his military service, including the Combat Infantry Badge.

2. According to the applicant, he believed they would be less conspicuous dressed as construction workers, as there was much construction going on in the area near the bank.

During his incarceration, the applicant was, by all accounts, a model prisoner. He received numerous college credits as a student through Louisiana State University and training as an accountant in the UNICOR Federal Prison Industries.

Upon his release in 1990, having served fifteen years in prison, Mr. Dortch worked as business manager for the Covenant Baptist Church in Washington, D.C. and then, in 1991, enrolled in law school at the District of Columbia School of Law. While in law school, the applicant was elected president of the Student Bar Association, Lieutenant Governor for the Student Division of the American Bar Association for the Eleventh Circuit, Chairman of the Committee on Racial and Ethnic Diversity and received the Dean's Cup for leadership at the law school. Mr. Dortch graduated in May of 1994 and has passed, in addition to the bar examination of West Virginia, the Maryland and District of Columbia bar examinations, though he has not been admitted in those jurisdictions.[3]

Since graduating from law school, the applicant has been an adjunct professor at the District of Columbia School of Law, has worked as a paralegal at a Charleston, West Virginia law firm, and has volunteered with summer youth employment programs. He has also been active in local church functions, counseling and bible prayer sessions. The applicant had no criminal arrests or convictions prior to his criminal activities in 1974 and, likewise, has had no arrests or convictions since then.

## II.

### Bar Application Procedure

Mr. Dortch's application for admission to practice law in the State of West Virginia was received by the Board on or about October 25, 1995. The applicant's application, which revealed his felony convictions and prison term,[4] was eventually referred to the District 8 Character Committee (hereinafter "Character Committee") for investigation

---

**3.** During its investigation of the applicant, the Board received documentation from bar admission authorities in both Maryland and the District of Columbia, where the applicant passed bar examinations in February of 1995 and July of 1995, respectively. The Board was advised by letter of June 11, 1996 that the District of Columbia Committee on Admissions had voted to hold in abeyance further consideration of the applicant's application pending the outcome of the Maryland admission proceedings.

Though Maryland's Sixth Judicial Circuit Character Committee had voted six to one to recommend Mr. Dortch's admission to the Maryland bar and the Maryland Board of Law Examiners adopted the Character Committee's findings, recommending his admission, the Court of Appeals of Maryland, the final admitting authority in that state, denied the applicant's admission. In a decision filed January 6, 1997, the Court of Appeals of Maryland concluded that the applicant's petition for admission was premature because he remains on parole supervision:

A person on parole is still serving a prison sentence, albeit, beyond the prison walls. *State v. Parker,* 334 Md. 576, 588, 640 A.2d 1104, 1110 (1994). We will not even entertain an application to admit a person to the practice of law when that person is still directly or indirectly serving a prison sentence for a crime so severe that disbarment would be clearly necessitated if the crime were committed by an attorney. We conclude that Dortch's petition for admission to the Maryland Bar is premature. Once Dortch is released from parole

supervision, he can request that this Court assess whether he is eligible for admission to the bar. We shall not consider Dortch's petition for admission until that time.

*In the Matter of the Application of John Curtis Dortch for Admission to the Bar of Maryland,* Misc. No. 16, p. 15 (Jan. 6, 1997).

The Court of Appeals further emphasized that it expressed no judgment as to the applicant's admissibility should he reapply for admission in the future.

We note that the Maryland Court of Appeals' decision denying Mr. Dortch's admission to the bar in that jurisdiction was filed after the hearing examiner in this case submitted his recommendation to the West Virginia Board of Law Examiners and after the Board recommended admission to this Court. *See* discussion, *infra.*

**4.** *See* Rule 4.3(a) of the Rules for Admission to the Practice of Law, which provides:

**Rule 4.3. Criminal, disciplinary and civil proceedings**

(a) *Criminal Record.*—An applicant shall be required to state in the application whether or not he or she has been convicted of any criminal offense or has been arrested on any criminal charge. In the case of an arrest, the applicant shall be required to state the time, place and disposition of the charge. In case of conviction, the applicant shall state the charge of which he or she was convicted and the time and place of conviction and the sentence imposed.

and report.[5] Following an investigation and interview of the applicant, the Character Committee, by letter to the Board dated January 17, 1996, indicated that

> if the Committee were to judge Mr. Dortch on his current character, without the background of the serious felonious activity, we would certainly recommend him for admission to the West Virginia Bar. Our Courts have seemed to have said on several occasions that the simple fact of a conviction of a serious crime precludes a person from being entitled to the license to practice law. If that is the rule in West Virginia, then Mr. Dortch should not be admitted.
>
> If, however, the Board of Bar [sic] Examiners believes that felonious activity and the conviction can be overcome by complying with a lengthy prison sentence exhibiting sincere contriteness and convincing his law school faculty and fellow students and associates of his sincerity, then it is clear that all of these exculpating factors are present and Mr. Dortch should be admitted as he would seem to be otherwise duly qualified.

The Board subsequently conducted an interview of the applicant on February 12, 1996, during its regularly-scheduled meeting. Following the meeting, the Board permitted the applicant to sit for the February 1996 bar examination but postponed deciding his character and fitness to practice law and eligibility for admission until after he had successfully completed the examination. As indicated above, Mr. Dortch passed the February 1996 bar examination.

At the Board's June 20, 1996 meeting, its six attending members reviewed the applicant's application and supporting documentation, as well as the Character Committee's investigation and report and the Board's own interview of the applicant on February 12, 1996. By a vote of three to three, a majority vote being required to certify eligibility for admission, the Board denied Mr. Dortch's application for admission. In its June 27, 1996 letter to the applicant notifying him of its decision, the Board indicated that the "[g]rounds for disapproval of [his] application include but are not limited to ... [his] ... [c]riminal history which includes a felony conviction for second degree murder, attempted armed robbery and conspiracy." [6]

The June 27, 1996 letter advised the applicant that, pursuant to Rule 5.3,[7] he could

---

5. *See* Rule 5.2(d) of the Rules for Admission to the Practice of Law, which provides, in relevant part:

> **5.2. Procedure of demonstration of good moral character.**
>
> (d) *Procedure.*—After receiving the application from the Board, the District Character Committee shall promptly, through one or more of its members: (1) determine whether to interview the applicant; (2) verify the facts stated in the application, determine whether to communicate with the references given therein, and make such further investigation as it may deem desirable or necessary; (3) consider the character and fitness of the applicant to be admitted to the bar; and (4) transmit to the Board of Law Examiners a report of its investigation and its recommendation in regard to the character and fitness of the applicant for admission to the bar. If the recommendation of the District Character Committee is against admission, the report of the District Character Committee shall set forth the facts upon which the adverse recommendation is based and its reasons for rendering an adverse recommendation, and the Board may make such further investigation as it may deem desirable or necessary[.]

6. The Board's letter referred specifically to Rule 5.0 of the Rules for Admission to the Practice of Law, which provides, in part:

> **Rule 5.0. Requirement of good moral character of applicant.**
>
> No person shall be admitted to the practice of law in the State of West Virginia, either by examination or on motion without examination, unless such person demonstrates to the Board, either directly or through the applicable District Character Committee, that he or she is possessed of good moral character [and] is mentally and emotionally stable[.]

7. Rule 5.3 of the Rules for Admission to the Practice of Law provides, in pertinent part:

> **Rule 5.3. Procedure upon adverse character determination.**
>
> Should the District Character Committee determine in the case of any applicant that there are proper grounds for disapproval of the application to practice law, the Board shall promptly notify the applicant of the reasons for such disapproval and give the applicant an opportunity to request a formal hearing as described in Rule 6.0. If the Board ultimately determines that an adverse report should be made on the application, it shall first give the applicant the privilege of withdrawing the application and, if the applicant elects not to

then withdraw his application or request a formal hearing. *See* Rule 6.0 of the Rules for Admission to the Practice of Law ("Administrative hearing procedure"). The applicant requested a formal administrative hearing.

A formal hearing was conducted on August 2, 1996 before Hearing Examiner Michael J. Del Giudice, Esquire. At the August 2, 1996 hearing, the applicant and four witnesses testified in support of the former's good moral character and fitness to practice law. The witnesses all agreed that Mr. Dortch had been no less than forthright about his criminal past and indicated that he took full responsibility for the armed robbery scheme which resulted in the death of a District of Columbia police officer.[8] Mr. Dortch himself was very candid in providing the Board with the details of his life before, during and after prison.

The record further consisted of the applicant's entire file with the Board and his curriculum vitae. In a decision dated September 16, 1996, recommending admission, Hearing Examiner Del Giudice concluded that the applicant has accepted and complied with all punishments rendered against him as a result of the heinous crime he committed in 1974; that he "has gone beyond what has been asked of him for the purposes of rehabilitation[;]" that he "has completely rehabilitated himself and is presently a contributing member of society, high community standing, and a person who has presented himself to the Board, Hearing Examiner and to those

who have testified on his behalf as a person of good moral character fit to practice law in the State of West Virginia." The hearing examiner further concluded that "[w]hile the Board has presented evidence to contradict the same, all such evidence existed in 1974, and none of it carries over beyond that time period[;]" and finally, that the applicant's "present good moral character outweighs his 20 year old criminal history."

During its November 5, 1996 meeting and following review of the hearing examiner's recommendations and the administrative hearing record, the Board voted three to two [9] to recommend to this Court that the applicant be admitted to the West Virginia bar. Accordingly, pursuant to Rule 7.0(a) [10] of the Rules for Admission to the Practice of Law, the Board presented to this Court a certificate of eligibility, certifying that the applicant has been found eligible for admission to practice law in this State. In an order dated November 7, 1996, this Court determined that the Board had not submitted adequate findings of fact and recommendations to enable it to review the applicant's eligibility. The Court, on its own motion, remanded the matter to the Board with directions to submit adequate written findings of fact and recommendations to enable this Court to review the applicant's eligibility.

On December 16, 1996, the Board filed with this Court its findings of fact and recommendations. The Board majority indicated that it was persuaded that the applicant's

---

withdraw the application, then a formal hearing shall be held if requested by the applicant.

8. For example, one of the witnesses, Reverend Matthew Julius Watts, the pastor of a local church, testified that Mr. Dortch shared the details of his past criminal conduct and prison experience with the entire congregation. According to Rev. Watts, the congregation embraced Mr. Dortch and respected his honesty and integrity. Mr. Dortch has become extremely active in Rev. Watts' church. For example, he is assisting in teaching an adult Sunday school class and serving as co-chairman of a men's fellowship group.

9. Justice Robin J. Davis was a member of the Board when the initial vote of three to three was taken. Justice Davis was subsequently elected to

this Court, upon which election she no longer participated in this matter before the Board. Consequently, the second vote by the Board was three to two in favor of certifying Mr. Dortch's eligibility for admission. Because Justice Davis participated in this matter when it was initially considered by the Board, she did not participate in the decision of the matter before this Court.

10. Rule 7.0(a) of the Rules for Admission to the Practice of Law provides:

**Rule 7.0. Admission procedure.**
(a) *Certificate of eligibility.*—The Board shall issue a certificate of eligibility, which shall be filed, along with a character report, with the Clerk of the Supreme Court of Appeals, for every applicant who has complied with the requirements of the applicable rules and who has paid the statutory fee.

demonstrated course of rehabilitative conduct amply supports the conclusion that he now possesses the requisite character and fitness for the practice of law. Certainly, it was of substantial concern to all members of the Board that the criminal conduct engaged in by the applicant twenty-two years ago was serious in nature and resulted in grave consequences. However, the [Board] is also mindful of its obligation to determine an applicant's *present* character and fitness qualifications. In view of the past criminal misconduct, Mr. Dortch carried a heavy burden in demonstrating that he has clearly overcome the personal shortcomings and misjudgments that led him into criminal activity.

### III.

### *Discussion*

### A.

■ It has been well established that "the right to practice law is not a natural or constitutional right but is in the nature of the privilege or franchise which this Court has the inherent power to grant or refuse." *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 550, 135 S.E.2d 741, 750 (1964) (*citing In re Eary*, 134 W.Va. 204, 58 S.E.2d 647 (1950)). Indeed, " '[a]rticle eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia.' Syl. pt. 1, *Lane v. West Virginia State Board of Law Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982)." Syl. pt. 4, *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994).[11]

Our interest in regulating lawyers is significant considering they " 'are essential to the primary governmental function of administering justice, and have historically been "officers of the court." ' " *Sargus v. W. Va. Bd. of Law Examiners*, 170 W.Va. 453, 457, 294 S.E.2d 440, 444 (1982) (*quoting Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975)). *See Frasher v. W. Va. Bd. of Law Examiners*, 185 W.Va. 725, 408 S.E.2d 675 (1991); *Pushinsky v. W. Va. Bd. of Law Examiners*, 164 W.Va. 736, 266 S.E.2d 444 (1980). This Court has exercised its jurisdiction over the practice of law in establishing standards for admission to the practice of law in this State. *Lane v. W. Va. State Bd. of Law Examiners*, 170 W.Va. 583–85, 295 S.E.2d 670, 673 (1982). *See generally Rules for Admission to the Practice of Law.* Among the requirements for admission is that the applicant possess good moral character. Rule 2.0 of the Rules for Admission to the Practice of Law.[12] Indeed, "[g]ood moral conduct has always been considered a qualification essential to admission to the Bar." *In Re Eary*, 134 W.Va. 204, 207–08, 58 S.E.2d 647, 650 (1950). It is, therefore, this Court's duty

to scrutinize carefully the qualifications of persons who seek to be admitted to practice before the courts of this State, in order that the *public may be protected* and the courts assisted in the discharge of the vital duties of the administration of law and the resolving of legal controversies. *If this Court permits persons to enter the profession of the law who do not have the requisite moral qualifications, it would result in debasing the profession and*

**11.** In addition to the Court's inherent power over the practice of law, the legislature enacted *W. Va.Code*, 30–2–1 [1981], *specifically* conferring upon "this Court the power to grant or deny an applicant a license to practice law in this state." *Summerfield*, 148 W.Va. at 550, 135 S.E.2d at 750.

**12.** Rule 2.0 of the Rules for Admission to the Practice of Law provides:

**Rule 2.0. General requirements for admission.**

An applicant is eligible for admission to the practice of law in West Virginia upon establishing to the satisfaction of the Board of Law Examiners: (1) age of at least eighteen (18)

years; (2) *good moral character and fitness;* (3) graduation from an approved college or university with an A.B., B.S., or higher degree, or its equivalent; (4) graduation from an approved law school with an L.L.B., J.D., or its equivalent under Rule 3.0(b); (5) passing score on the West Virginia General Bar Examination or qualification under Rule 4.0, et seq.; and, (6) passing score on the Multistate Professional Responsibility Examination within twenty-five months of achieving a passing score on the West Virginia Bar Examination or application for admission on motion.
(emphasis added).

*would bring disrepute upon the administration of justice. Thereby, the confidence of the people in their courts would be destroyed.*

*Id.,* 134 W.Va. at 208–09, 58 S.E.2d at 650 (emphasis added). *See Pushinsky,* 164 W.Va. at 746, 266 S.E.2d at 450.

Accordingly, this Court is now called upon to carefully scrutinize this applicant's moral qualifications in order that the public and the integrity of the legal system will be protected.

## B.

This Court has held the following with regard to judicial review of lawyer disciplinary proceedings:

'A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this court gives respectful consideration to the [Board's] recommendation while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).

Syl. pt. 2, *Lawyer Disciplinary Board v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

This standard of review is consistent with our inherent power to define, regulate and control the practice of law in this State, *W. Va. Const.* art. VIII, § 1, *et seq.;* syl. pt. 4, *Karl, supra,* which includes proceedings before and recommendations by the Board of Law Examiners with regard to applicants for admission to the bar.

■ Accordingly, this Court reviews *de novo* the adjudicatory record made before the West Virginia Board of Law Examiners with regard to questions of law, questions of application of the law to the facts, and questions of whether an applicant should or should not be admitted to the practice of law. Although this Court gives respectful consideration to the Board of Law Examiners' recommendations, it ultimately exercises its own independent judgment. On the other hand, this Court gives substantial deference to the Board of Law Examiners' findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record. *See McGraw, supra; Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).

## C.

Most jurisdictions have no *per se* rule denying admission to applicants with prior felony convictions. Maureen M. Carr, *The Effect of Prior Criminal Conduct on the Admission to Practice Law: The Move to More Flexible Admission Standards,* 8 Geo. J. Legal Ethics 367, 368–69, 379–90 (1995). Rather, in an attempt "to strike a balance among several competing concerns[,] [that of] protecting the public, safeguarding the image of the legal profession, and allowing a fully rehabilitated individual the opportunity to serve the community in the capacity of his or her choice[,]" the majority of states "have established rebuttable presumptions of disqualification." *Id.* at 383–84.

Thus, while "evidence of criminal convictions usually suggests unfitness and therefore should be considered in the overall assessment of an applicant's fitness to practice law[,][e]vidence of the applicant's reform and rehabilitation must also be taken into account." *In re Manville,* 494 A.2d 1289, 1295 (D.C.Ct.App.1985), *remanded,* 538 A.2d 1128 (1988) [13] and citations therein (footnotes

---

**13.** *Manville* involved a bar applicant who, while involved in drug use and dealing, was recruited by a friend to recover certain drugs and money believed to be stolen by another individual. *Id.,* 494 A.2d at 1291. The applicant and two others, all of whom were carrying guns and one of whom was carrying chloroform—apparently "to get high"—entered the individual's apartment on the pretext of buying drugs. *Id.* They proceeded to beat up the individual, during which time, two visitors arrived at the apartment. *Id.* The applicant used chloroform on the individual and the two visitors to render them unconscious. *Id.* One of the visitors died as a result of the chloroform. *Id.* The applicant evaded arrest for four

omitted). In addition, courts must conclude that admission of the applicant will not have a "justifiable and substantial adverse effect on the public confidence in the administration of justice[.]" Syl. pt. 1, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980).[14] *See Matter of Prager,* 422 Mass. 86, 661 N.E.2d 84, 90 (1996) ("The allowance of an applicant's original admission to the bar is ... [a]n ... endorsement that the applicant is worthy of the public trust."); ABA Code of Recommended Standards for Bar Examiners, Comprehensive Guide to Bar Admission Requirements (1995–96) ("The primary purpose of character and fitness screening before admission to the bar is the protection of the public and the system of justice."); Deborah L. Rhode, *Moral Character as a Professional Credential,* 94 Yale L.J. 491, 507–12 (1985).

As a result of an applicant's criminal conviction, courts place a heavy burden upon him or her to show good moral character. *See Prager,* 661 N.E.2d at 90–91; *In re Polin,* 596 A.2d 50, 53 (D.C.Ct.App.1991), 630 A.2d 1140 (1993) [15] ("In general, 'an applicant with a background of a conviction of a felony or other serious crime must carry a very heavy burden in order to establish good moral character.' ") (*quoting In re Manville,* 538 A.2d at 1134 n. 7 ); *In re Belsher,* 102 Wash.2d 844, 689 P.2d 1078, 1082 (1984).

In West Virginia, Rule 5.2(b) of the Rules for Admission to the Practice of Law provides that an applicant seeking admission to the practice of law "shall at all times have the burden of proving his or her good moral character before the District Character Committee, the Board, and the Court." Rule

---

months and ultimately pleaded guilty to voluntary manslaughter. *Id.*

In the first *Manville* decision, the court remanded the matter to the admissions' committee for further proceedings. Subsequently, in the second *Manville* decision, the court accepted the admissions' committee's recommendation of admission, having been persuaded that the applicant was sincerely remorseful for his criminal conduct and that

[h]e is attempting to atone for his act by dedicating his life to improving the lot of prisoners. This strong commitment stems from his personal experiences, to be sure, but is unquestionably sincere and socially valuable. The unanimous opinion of those who know him is that he is dedicated to this goal and desires admission to the bar in order to better serve his chosen clients.

*Manville,* 538 A.2d at .1134. *But see Petition of Wright,* 102 Wash.2d 855, 690 P.2d 1134 (1984) (applicant convicted of second degree murder while armed with a firearm denied admission; however, court did not foreclose re-application for admission in the future); *Application of Roger MM,* 96 A.D.2d 1133, 466 N.Y.S.2d 873 (1983) (applicant's prior convictions of bank robbery and first degree murder "would operate to disqualify him, on character grounds," from admission); *Matter of Moore,* 308 N.C. 771, 303 S.E.2d 810, 817 (1983) (applicant convicted of second degree murder of estranged wife's paramour denied permission to sit for 1978 bar examination; court noted, however, "that the applicant's moral character to stand for any future Bar Examination is not determined by this opinion.").

**14.** In the related area of a disbarred attorney seeking reinstatement to the bar, to which we have analogized an applicant seeking admission to the bar in the first instance, *see Eary,* 134 W.Va. at 207–08, 58 S.E.2d at 649–50; *In re*

*Daugherty,* 103 W.Va. 7, 9, 136 S.E. 402 (1927), we have held that the disbarred attorney must show

that he presently possesses the *integrity, moral character* and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of *rehabilitation.* In addition, *the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration.*

*Brown* at syl. pt. 1, 262 S.E.2d 444. (emphasis added).

**15.** In the first *Polin* decision, the District of Columbia Court of Appeals rejected the applicant's application for admission. *Id.,* 596 A.2d 50. Though the applicant, who had been convicted of conspiracy to distribute cocaine, a felony, had demonstrated that he had made "outstanding progress toward rehabilitation," the court concluded that not enough time had passed since his conviction and release from a halfway house. *Id.,* 596 A.2d at 51. Thus, the court found that the applicant had then failed to establish "that he is so fully rehabilitated that he can be deemed at this time to have the good moral character required for admission to the bar." *Id.*

The applicant subsequently reapplied for admission and, in the second *Polin* decision, the court found that he possessed the requisite moral character as a result of "the duration and quality of [his] good behavior." *Id.,* 630 A.2d at 1141. *See Id.,* 630 A.2d at 1142 ("no purpose would be served by requiring a more extended demonstration of worthiness for admission.")

5.2(b), in relevant part. *See* Rules 4.2(b) [16] and 5.0, *supra* [17] of the Rules for Admission to the Practice of Law. *See also Pushinsky*, 164 W.Va. at 745–46, 266 S.E.2d at 450; Rule 4.1(c) of the Rules for Admission to the Practice of Law. Though Rule 5.2(b) does not distinguish between an applicant who has been convicted of a felony and other applicants, we agree with the majority of states that an applicant who has previously been convicted of a felony or other serious crime carries a heavy burden of persuading this Court that he presently possesses good moral character sufficient to be invited into the legal community of this State. *See In re Brown*, 164 W.Va. 234, 237, 262 S.E.2d 444, 445 (1980), *remanded*, 166 W.Va. 226, 273 S.E.2d 567 (1980) ("Heavy burden" cast upon disbarred attorney convicted of three counts of conspiracy to commit bribery and of bribery of a juror).

We note, however, as did the Supreme Court of New Jersey, that "in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make. In all cases, the need to ensure the legitimacy of the judicial process remains paramount." *In re Matthews*, 94 N.J. 59, 462 A.2d 165, 176 (1983). [18] *See Manville*, 494 A.2d at 1296.

In the first *Manville* decision, [19] the District of Columbia Court of Appeals set forth eleven factors, intended to be illustrative and not exhaustive, derived from the United States Supreme Court decision of *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and from other courts subsequent, which should be considered by courts in assessing the moral character of bar applicants whose backgrounds include criminal convictions:

1. The nature and character of the offenses committed.

2. The number and duration of offenses.

3. The age and maturity of the applicant when the offenses were committed.

4. The social and historical context in which the offenses were committed.

5. The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6. The grant or denial of a pardon for offenses committed.

7. The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8. The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9. The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10. The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11. The opinions of character witnesses about the applicant's moral fitness.

*Manville*, 494 A.2d at 1296–97 (citations omitted). Although " 'there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character[,]' " *Id.*, 494 A.2d at 1297 (quot-

---

**16.** Rule 4.2(b) of the Rules for Admission to the Practice of Law provides:

> **Rule 4.2. Requirement of good moral character.**
> (b) *Proof of good moral character.*—In order to be eligible for admission, the applicant must show that he or she is possessed of good moral character and is mentally and emotionally stable.

**17.** *See* n. 6, *supra*.

**18.** In *Matthews*, an admissions case in which the applicant had been involved in a fraudulent investment scheme, the court determined that the record before it did not reveal whether "evidence of rehabilitation and positive acts on [the appli-

cant's] behalf [were] sufficiently related to the nature of his wrongdoing to overcome the strong presumption of continuing unfitness to practice law garnered from his prior conduct." *Id.*, 462 A.2d at 177. Although the court reversed the character committee's decision to issue a certification of fitness to practice, it did so without prejudice, permitting the applicant to present additional evidence concerning his rehabilitation. *Id.*

**19.** The court in the second *Manville* decision expressly "reaffirm[ed] en banc the principles enunciated in *Manville I* for this court's evaluation of applications for admission to the bar of individuals who previously have been convicted of felonies." 538 A.2d at 1132.

*ing Application of Allan S.*, 282 Md. 683, 387 A.2d 271, 275 (1978)), we find these factors to be instructive nevertheless.

■ By his own admission, Mr. Dortch assembled seven other individuals to carry out an elaborate armed robbery conspiracy. At that time, the applicant was twenty-nine years old, a seasoned military veteran and an experienced businessman. Clearly, his criminal mischief was in no way attributable to his youth, immaturity or inexperience.

The robbery scheme, the result of which was intended to fund a failing financial venture, ended in the tragic death of a young police officer. We are well aware that Mr. Dortch did not actually pull the trigger that killed Officer Cobb and that he was not at the scene when she was killed. However, in employing several deadly weapons as part of the conspiracy, the death of an innocent third party was nonetheless foreseeable and, arguably, inevitable.

We acknowledge Mr. Dortch's commendable prison record, his present dedication to community service and his extensive rehabilitative efforts during the seven years since his release from prison. We further note his candor in admitting his guilt and responsibility in the death of Officer Cobb. However, we are mindful that attorneys

> occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the even-

handed administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be properly administered. From this expectancy arises the concept of preserving public confidence in the administration of justice by [denying admission to those] who fail to conform to professional standards.

*Brown*, 166 W. Va. at 232–33, 273 S.E.2d at 570. (footnote omitted).

Though Mr. Dortch may have demonstrated that he has been rehabilitated, we believe the horrendous crime of which he was the prime conspirator outweighs his present good deeds. Indeed, the magnitude of his crimes constitutes an " 'indelibly negative mark' " on this applicant's record. *Application of Avcollie*, 43 Conn.Supp. 13, 637 A.2d 409, 412 (1993). We firmly believe that it would be detrimental to the public interest and the public's confidence in the integrity of the legal profession [20] were we to admit Mr. Dortch to the practice of law in this State.[21]

■ As we indicated above, pursuant to Rules 4.2(b), 5.0 and 5.2(b) of the Rules for Admission to the Practice of Law, in order to be eligible for admission to the practice of law in this State, an applicant must prove that he or she possesses good moral character.

---

**20.** In *Brown*, 166 W.Va. at 239, 273 S.E.2d at 574, this Court denied reinstatement of a disbarred attorney convicted of conspiracy to commit bribery and the bribery of a juror:

> Because of the extremely serious nature of applicant's original offense of bribing a juror when coupled with the separate conviction of conspiring to bribe public officials, we cannot help but conclude that his reinstatement would have a *justifiable and substantial adverse effect on the public confidence in the administration of justice*. The nature of these crimes directed as they are to the core of the legal system and the integrity of governmental institutions demonstrates *a profound lack of moral character on the part of the applicant.*

(emphasis added).

The crimes committed by the disbarred attorney in *Brown, supra*, pale in comparison to the criminal activity in which Mr. Dortch was involved. Clearly, Mr. Dortch's admission to the bar would have a justifiable and substantial ad-

verse effect on the public confidence in the administration of justice. We therefore cannot permit it.

**21.** In the concurring opinion of the Court of Appeals of Maryland decision denying Mr. Dortch's admission in that state, it was noted

> that if [Mr. Dortch] were permitted to practice law in this State, and if he were to be called as a witness in any judicial proceeding, his credibility could be impeached with his criminal convictions. *See* Maryland Rule 5–609; *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994). In addition, he cannot vote in this State, *Md. Const.* Art. I, § 4, he cannot hold office in this State, *Md. Const.*, art. I, § 12, he cannot serve on a jury, *Md.Code* (1974, 1995 Repl.Vol.1996 Cum.Supp.) § 8–207(b)(5) of Courts and Judicial Proceedings Article, and he cannot hold a liquor license, *Md.Code* (1957, 1996 Repl.Vol.) Art. 2B, § 10–103.

*Matter of Dortch*, at 6 (concurring opinion).

582

■ Furthermore, when assessing the moral character of an applicant whose background includes a criminal conviction, the following factors should be considered: (1) The nature and character of the offenses committed; (2) The number and duration of offenses; (3) The age and maturity of the applicant when the offenses were committed; (4) The social and historical context in which the offenses were committed; (5) The sufficiency of the punishment undergone and restitution made in connection with the offenses; (6) The grant or denial of a pardon for offenses committed; (7) The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period; (8) The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse); (9) The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness; (10) The applicant's constructive activities and accomplishments subsequent to the criminal convictions; and (11) The opinions of character witnesses about the applicant's moral fitness. These factors are intended to be illustrative rather than exhaustive. *See Manville,* 494 A.2d at 1296–97.

■ Finally, even though, pursuant to Rule 7.0 of the Rules for Admission to the Practice of Law, the West Virginia Board of Law Examiners issues a certificate of eligibility, and files it along with a character report, with this Court, for an applicant for admission to the practice of law, this Court is not required to admit that applicant. If this Court determines that the applicant possesses the necessary qualifications for admission, it will, pursuant to its inherent power to define, regulate and control the practice of law in this State, admit the applicant to the practice of law. However, if this Court determines that the applicant does not possess the necessary qualifications for admission, it will, pursuant to its inherent power to define, regulate and control the practice of law in this State, deny the applicant's admission to the practice of law. *See* syl. pt. 4, *Karl, supra.*

IV.

For the reasons discussed herein, we conclude that Mr. Dortch has failed to carry the burden of establishing that he possesses the moral character sufficient to practice law in this State. Although the Board issued a certificate of eligibility and filed it with this Court for his admission, we deny his admission, as he does not possess the good moral character necessary for admission to the practice of law in this State. Accordingly, the certificate of eligibility for the admission of John Curtis Dortch to the practice of law in the State of West Virginia is refused.

Admission to the Practice of Law Denied.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.