557 S.E.2d 319

**In re Mark L. McMILLIAN**

No. 27866.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 3, 2001.

Decided Nov. 30, 2001.

Concurring Opinion of Justice
Starcher Dec. 13, 2001.

Thomas W. Smith, Esq., Charleston, West Virginia, Attorney for Appellant.

John M. Hedges, Esq., Byrne & Hedges, Morgantown, West Virginia, Attorney for Appellee.

PER CURIAM:

This case is before this Court for review of the Board of Law Examiners' recommendation that Mark L. McMillian not be admitted to the practice of law.

## I.

Mr. McMillian's application for the admission to the practice of law in the State of West Virginia was received by the West Virginia Board of Law Examiners ("the Board") on March 25, 1999. Based on the information contained in Mr. McMillian's application and additional information obtained during the Board's character and fitness investigation, the Board requested that Mr. McMillian appear for an interview with the Board on November 11, 1999.

On November 12, 1999, Mr. McMillian was informed by letter of the Board's unanimous

vote to deny his application for admission. The denial was based on concerns arising from Mr. McMillian's discharge from the Kanawha County Sheriff's Department in 1987 and the circumstances surrounding his 1995 federal felony conviction for illegal wiretapping.

After being notified of the Board's initial denial of his application, Mr. McMillian requested an administrative hearing, pursuant to Rule 6.0 of the *West Virginia Rules for the Admission to the Practice of Law.* An administrative hearing before a Board Hearing Examiner was held on January 11 and 12, 2000. On March 28, 2000, the hearing examiner recommended that the Board approve Mr. McMillian's application for admission.

In accordance with the procedure established under Rule 6.0 of the *Rules for Admission,* the Board reconsidered Mr. McMillian's application in light of the evidence presented during the administrative hearing and the recommendation of the hearing examiner.

On May 12, 2000, the Board informed Mr. McMillian that it would not recommend his admission to the practice of law. The Board gave several reasons for its decision. The Board expressed concern for various aspects of Mr. McMillian's wiretapping conviction, noting that the 1995 felony conviction was of a relatively "recent vintage." The Board noted that when he committed the felonious activity, Mr. McMillian was approximately 40 years old, and that he knowingly violated the law for financial compensation. The Board was also concerned about Mr. McMillian's absence from this country while federal wiretapping charges were pending against him. Another basis for the Board's concern was the conduct that led to Mr. McMillian's discharge from employment by the Kanawha County Sheriff's Department in 1987. *See McMillian v. Ashley,* 193 W.Va. 269, 455 S.E.2d 921 (1995).

Following the Board's final action on his application for admission, Mr. McMillian filed exceptions with this Court on June 21, 2000.

In our prior opinion filed on December 5, 2000, this Court denied Mr. McMillian's ap-plication for admission to the practice of law. On January 4, 2001, Mr. McMillian filed a petition for rehearing. In his petition, he asked this Court to reconsider its prior opinion, alleging (1) that there were inaccuracies and omissions in the Board of Law Examiner's report and (2) that denying him admission to the practice of law contradicts established principles governing how the integrity of the legal profession is maintained.

On January 11, 2001, this Court granted Mr. McMillian's petition for rehearing, and after reviewing the legal briefs and the arguments contained therein, we deliver the instant opinion and decision.

## II.

■ "Article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia." Syllabus Point 1, *Lane v. West Virginia State Board of Law Examiners,* 170 W.Va. 583, 295 S.E.2d 670 (1982); *W.Va.Code,* 30–2–1 [1981] (granting Supreme Court power to grant or deny an applicant's license to practice law).

■ When reviewing the findings and recommendations of the Board, this Court has plenary authority.

This Court reviews *de novo* the adjudicatory record made before the West Virginia Board of Law Examiners with regard to questions of law, questions of application of the law to the facts, and questions of whether an applicant should or should not be admitted to the practice of law. Although this Court gives respectful consideration to the Board of Law Examiners' recommendations, it ultimately exercises its own independent judgment. On the other hand, this Court gives substantial deference to the Board of Law Examiners' findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 2, *Matter of Dortch,* 199 W.Va. 571, 486 S.E.2d 311 (1997).

■ There are six general requirements for admission to practice law in West Virginia. *Rules for Admission to the Practice of*

*the Law*, Rule 2.0 [1992]. Chief among the requirements for admission to the practice of law is that the applicant possess "good moral character." *Rules for Admission to the Practice of the Law*, Rule 2.0(2) [1992]. "Indeed, [g]ood moral conduct has always been considered a qualification essential to admission to the Bar." *Matter of Dortch*, 199 W.Va. at 577, 486 S.E.2d at 317 (1997) *quoting In Re Eary*, 134 W.Va. 204, 207–08, 58 S.E.2d 647, 650 (1950).

The burden is on the applicant to prove that she or he has good moral character. "Pursuant to Rules 4.2(b), 5.0 and 5.2(b) of the Rules for Admission to the Practice of Law, in order to be eligible for admission to the practice of law in this State, an applicant must prove that he or she possesses good moral character." Syllabus Point 3, *Matter of Dortch, supra*.

■ Syllabus Point 4 of *Dortch* provides guidance for examining the moral character of an applicant.

When assessing the moral character of an applicant whose background includes a criminal conviction, the following factors should be considered: (1) The nature and character of the offenses committed; (2) The number and duration of offenses; (3) The age and maturity of the applicant when the offenses were committed; (4) The social and historical context in which the offenses were committed; (5) The sufficiency of the punishment undergone and restitution made in connection with the offenses; (6) The grant or denial of a pardon for offenses committed; (7) The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period; (8) The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse); (9) The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness; (10) The applicant's constructive activities and accomplishments subsequent to the criminal convictions; and (11) The opinions of character witnesses about the applicant's moral fitness. These factors are intended to be illustrative rather than exhaustive.

199 W.Va. 571, 486 S.E.2d 311 (1997).

The 11 factors listed in *Matter of Dortch* are provided to determine whether there is a likelihood that an applicant will conduct himself in a manner beneficial to the public interest, and in a manner which will inspire public confidence in the integrity of the legal profession.

■ One point that Mr. McMillian emphasizes, in his petition for rehearing, is the amount of time that has passed since his misconduct, pointing out that it has been 6 years since he engaged in illegal wiretapping. The Board's report considered 6 years to be a relatively short period of time between the conviction for a felony and admission to the West Virginia State Bar. Mr. McMillian argues that 6 years should be considered a relatively long period of time. Mr. McMillian argues that if he was a lawyer whose license had been annulled, his license would have been reinstated after 5 years and that it is unfair to hold him to a higher standard. *See In Re Smith*, 166 W.Va. 22, 32, 270 S.E.2d 768, 774 (1980) (decided under the former *Bylaws* of the West Virginia State Bar, the Court stated that an attorney whose license to practice has been annulled may reapply for admission after 5 years, and "[a]bsent a showing by the Committee on Legal Ethics that reinstatement will endanger the public, an attorney's license to practice will be reinstated after five years of good behavior after disbarment.")

However, it has been only 2 years since Mr. McMillian completed a course of study that gave him a professional education and grounding in the principles that govern the conduct of an attorney. Mr. McMillian was not eligible to even be considered to be an attorney until 2 years ago. We consider that good behavior prior to completing a legal education, while not to be dismissed, can be viewed as qualitatively somewhat different than good behavior after receiving a legal education or good behavior after a lawyer disciplinary action.

Having considered all of the evidence before this Court under a *de novo* standard,

this Court continues to believe, as we stated in our original opinion on this matter, that [i]n the present case, Mr. McMillian, as a mature adult, twice engaged in conduct which has thrown into question his respect for the law, conduct of a type which, if committed by a practicing lawyer would inevitably diminish seriously the public's confidence in the legal profession.... [T]he Court believes that, in spite of the fact that Mr. McMillian has introduced evidence that he is remorseful, that he has been open, that many consider him fit to practice law, and that there are more positive than negative factors among the 11 mentioned in *Matter of Dortch, supra*, Mr. McMillian has failed to show that it is likely that his conduct will be beneficial to the public interest or will inspire confidence in the integrity of the judicial profession.

Having fully considered all of the arguments raised in Mr. McMillian's petition, nothing presented in the petition for rehearing alters this Court's prior decision.

■ In addition to the fundamental requisites of legal skill and competency, good moral character has always been considered essential to admission to the practice of law in West Virginia. There is no presumption as to character, and the applicant has, at all times, the burden of proving his or her good moral character before the District Character Committee, the Board, and this Court. An applicant, such as Mr. McMillian, who has a prior felony conviction, "carries a heavy burden of persuading this Court that he presently possesses good moral character sufficient to be invited into the legal community of this State." *Matter of Dortch*, 199 W.Va. at 580, 486 S.E.2d at 320 (1997). *See also In re Brown*, 164 W.Va. 234, 237, 262 S.E.2d 444, 445 (1980) ("Heavy burden" cast upon disbarred attorney convicted of three counts of conspiracy to commit bribery and of bribery of a juror.).

## III.

At this time, this Court finds that Mr. McMillian has failed to establish his entitlement to practice law in West Virginia. For the reasons stated, the petition of Mark L. McMillian to practice law in the State of West Virginia is denied.

Admission to the Practice of Law Denied.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judges JAY M. HOKE and JOHN R. FRAZIER, sitting by temporary assignment.

STARCHER, Justice, concurring.
(Filed Dec. 13, 2001)

I concur with the majority opinion's refusal to approve Mr. McMillian's admission to the practice of law at this time. I write separately to point out that nothing in the majority's *per curiam* opinion, in which I fully join, would preclude Mr. McMillian, after a period of time, from reapplying for the privilege of practicing law in West Virginia. Allowing a longer period to pass before reapplying for admission may give Mr. McMillian the opportunity to demonstrate that he has been rehabilitated.

Rehabilitation is at the heart of our American judicial system. "Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct." Syllabus Point 2, *In Re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980). This same principle of rehabilitation applies to an applicant seeking initial admission to the practice of law.

A felony is a strong negative to overcome, but, depending on the gravity of the felony, one that may be overcome with time and exemplary behavior. "Time provides the applicant an opportunity to build a record of good character and integrity." *In Re Brown*, 166 W.Va. at 235, 273 S.E.2d at 572. *In accord, Matter of Hiss*, 368 Mass. 447, 460 n. 19, 333 N.E.2d 429, 437 n. 19 (1975) ("[A] long time span between disbarment and petition for reinstatement, during which the petitioner's conduct was exemplary, reinforces his claim to rehabilitation.").

If Mr. McMillian hopes to ever be admitted to the West Virginia State Bar sometime in the future, he might be wise to put his legal education to use in both his employment and private life—*e.g.*, working as a paralegal and volunteering at a legal aid office. In this way, Mr. McMillian might demonstrate his rehabilitation through his

commitment to the law. *See In Re Brown,* 166 W.Va. at 235, 273 S.E.2d at 572 ("A further important area of inquiry is the applicant's activity and conduct since the date of his disbarment, since it is upon this objective record that good character must be judged.").

In addressing Mr. McMillian's concern that this Court is holding him to a higher standard than we hold disbarred lawyers, I note that Mr. McMillian is different from most other applicants seeking admission or reinstatement to the practice law. His misconduct was not the result of a youthful indiscretion, but rather was the act of a former law enforcement officer who certainly should have known better. *See In Re Brown,* 166 W.Va. at 235, 273 S.E.2d at 572 ("Another factor to be considered on reinstatement is the maturity and experience of the practitioner at the time of his disbarment—a recognition that a youthful and inexperienced attorney may have blundered as a result of inexperience rather than as a result of deliberate calculation.").

Lawyers and those who wish to be lawyers are held to a high standard because of the unique position that they hold in our society. "Woven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the evenhanded administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness." *In Re Brown,* 166 W.Va. at 232, 273 S.E.2d at 570. By not admitting Mr. McMillian to the practice of law at this time, we are merely holding him to the same high standard that we hold others who wish to practice law in West Virginia.

Considering the offenses that Mr. McMillian committed, as a former law enforcement officer, he should be grateful that this Court is simply denying his admission to practice law at this time, as opposed to making an explicit holding that he may never practice law in the State of West Virginia.